MARK S. HITCHCOCK ET AL. v. CAVALLO S. PRATT ET AL.

*Forcible detainer—Treble damages—Loss of profits—Sufficiency of counts—Dismissal of writ of error.*

Comp. L. § 6717 allows one who has obtained restitution in forcible entry proceedings to sue the defendant in trespass and recover treble damages. *Held* that he is not deprived of this remedy by defendant's voluntary surrender of the premises and dismissal of a writ of error sued out by him on the judgment of restitution.

Dismissal of a writ of error leaves the judgment on which it was sued out operative and conclusive.

The statutory action of trespass which one who has obtained restitution in forcible entry proceedings is entitled to bring against the defendant therein, and in which he is allowed to recover treble damages, is not the same as the common-law action of trespass for mesne profits, though in pari materia.

Damages for a forcible entry cannot be based on any specific effect of the act that is not near enough to the injury done to make it just and reasonable that defendants answer for it to the plaintiffs; nor on any particular effect, however natural, if it is not a necessary result, unless it is specially charged as a ground of recovery.

Loss of profits is a proper element of the damages recoverable in an action of trespass for forcible entry and detainer.

Whether the damages allowed by Comp. L. § 6717 in addition to the treble damages for forcible entry and detainer, are not such as may have accrued before the act complained of—Q.

The sufficiency of the counts of a declaration cannot be considered on review if there is no assignment of error thereon.

Comp. L. § 6717, in allowing the recovery of treble damages by one who has recovered judgment of restitution in forcible entry proceedings, contemplates that single and treble damages may be recovered under the same count.

Treble damages are recoverable in a statutory action therefor if the declaration sufficiently states the cause of action and specifically refers, for authority, to the statute allowing the court to treble the damages.

Error to Jackson. (Hooker, J.) June 6.—Oct. 3.

TRESPASS. Defendants bring error. Affirmed.

*A. & C. A. Blair* for appellants. The action for mesne profits is discussed in 1 Chit. Pl. (7th Am. ed.) 222–5 : 2 id. 870, n. *h ;* Wood's L. & T. 982 ; and the damages recoverable therein are confined to (1) compensation for use and occupation ; (2) waste or special damage to the premises ; (3) costs of the action for re-possession : 1 Sedgwick on Damages 249, 254: 2 id. 591 ; *Bartholomew v. Chapin* 10 Met. 1 ; *Braman v. Perry* 12 Pick. 118 ; the measure of damages is the same as in assumpsit for use and occupation : *Holmes v. Davis* 19 N. Y. 488 ; damages for withholding real estate are distinct from claims for rents and profits : *Larned v. Hudson* 57 N. Y. 151 ; *Livingston v. Tanner* 12 Barb. 481 ; a claim for treble damages in the words. " That this plaintiff, upon the whole, on account of the unlawful detention of said premises, has sustained damage to the amount of two thousand dollars, and claims treble damages in the premises, as prescribed for in said statute, and therefore she brings this suit ;" was held not to be counting upon the statute in the strict language of pleading : 1 Chit. Pl. 405 ; *Chipman v. Emeric* 5 Cal. 239 ; *McKeon v. Caherty* 1 Hall 300 ; *Benton v. Dale* 1 Cow. 160.

*Gibson, Parkinson & Ashley* for appellees.

GRAVES, C. J. For the purpose of understanding this controversy it will be necessary to mention four several store buildings in the city of Jackson, but it will save words to identify them by numbers. The *first* is a building on the north side of Main street, and formerly owned by Douglass Gibson ; and the *second*, a building nearly opposite, and belonging to George I. and Jacob K. Smalley ; the *third*, a store contained in the block put up by Allen Bennett in 1881 ; and the *fourth*, a double store on the corner of Jackson and Pearl streets.

Prior to December, 1880, the defendants occupied No. *one* as tenants of Mr. Gibson ; the lease was to expire March 14, 1881. The plaintiffs occupied No. *two*, nearly opposite, under a lease which was soon to expire. Each concern carried on hardware business.

The plaintiffs offered to buy No. *one* of Gibson, and he informed defendants of his opportunity and proposed to re-let to them for a fixed term at an increased rent, and they refused to rent for any period beyond their term, which was limited, as already stated, to the 14th of March. The plaintiffs were desirous to secure a place to which they could remove their business at the expiration of their lease of No. *two*, and they proceeded with their negotiations for the purchase of No. *one*, and since the defendants had decided that they would hire no longer than March 14th, Mr. Gibson closed with the plaintiffs' offer and entered into a written agreement with them for a sale of the property. They were to have possession March 15th, the day following the expiration of defendant's term, and they relied on the arrangement and considered that the defendants would remove at the end of their term on the 14th of March, and enable them to transfer their stock on the 15th.

In the winter of 1881 Allen Bennett commenced putting up his block, and represented that he would have it ready for occupation by the 15th of March, and the defendants engaged the store in it mentioned as No. *three*. The defendants expected it would be ready in time for them to transfer their stock to it at or about the close of their term at No. *one*. But the construction of the block lagged, and the store No. 3 was not made ready for occupation until the 28th of September. Early in the spring of 1881 the right of the plaintiffs to remain in No. 2 ceased, and their landlords, the Smalleys, insisted on possession. The defendants, not being able to use No. 3, still continued in No. 1, and so prevented the plaintiffs from getting in under their purchase. The Smalleys commenced summary proceedings against the plaintiffs to expel them from No. 2, and in April obtained judgment, and on the 30th the plaintiffs were compelled to quit. In these circumstances, and whilst the plaintiffs were threatened with expulsion from No. 2, the defendants requested permission to remain in No. 1 until No. 3 should be ready for them; but this was declined. The defendants' term coming to a close, the plaintiffs received a deed from

Mr. Gibson and called for possession, which was refused. They immediately commenced summary proceedings before a circuit court commissioner, who gave judgment in their favor on the 9th of April; but the defendants appealed. The plaintiffs being unable to hold No. 2, and being kept out of No. 1, removed to No. *four*, which was the best situation they could obtain.

In June the circuit court rendered judgment on the appeal against the defendants and issued a writ of restitution. But the defendants sued out a writ of error, and secured a stay of the process for possession.

At length the store No. 3 was finished and the defendants removed to it, and on the 28th of September abandoned their writ of error and submitted to the judgment of the circuit court and allowed the plaintiffs to enter.

The refusal of defendants to give possession at the end of their term, and their subsequent resistance to the plaintiffs' proceedings to obtain it, were acts purely dilatory and devoid of merit. If they were in straits it was their own fault or misfortune. The course they took was merely a resort to legal formalities to gain time and keep the plaintiffs out of a possession to which, in law, they were entitled, and which the defendants well knew was not open to legitimate dispute. This is admitted.

In November, 1881, the plaintiffs brought this action for damages and relied on the following statute:

"The complainant obtaining restitution of any premises under the provisions of this chapter, shall be entitled to an action of trespass, or trespass on the case against the defendant, and may recover treble damages from the time of the forcible entry, or forcible detainer, or of the notice to quit or demand of possession, as the case may be, and all other damages to which he may be entitled." Comp. L. ch. 211, "General Provisions," (6717,) Sec. 24.

The jury before whom the cause was tried found in favor of the plaintiffs, and assessed their damages at $1655, and having been requested to state in what way they found in regard to certain given items, they answered as follows: (1st) $200 for labor, etc., in removing to No. 4, and thence to

No. 1, beyond what would have been necessary in case of a direct removal to the latter; (2d) $50 for injury to stock by such circuitous removal beyond what would have been necessary in going direct to No. 1; (3d) $57.50 for injury to stock caused by the unfitness of No. 4 as a place of storage; (4th) $35 for necessary expenditures in the proceedings to get possession, above taxable costs;'(5th) $500 for loss of profits caused by defendants' keeping possession during the time they unlawfully held it; (6th) $812.50 for the rental value of No. 1, from March 15 to September 28. The court proceeded to treble the last item, and then added the other items to the product, and awarded judgment for the entire amount.

First. It is objected that the plaintiffs had no cause of action on the statute because they did not obtain restitution "under the provisions of" the "chapter." The position is that the store was voluntarily surrendered by the defendants and accepted by the plaintiffs during the pendency of the proceedings.

This is not a satisfactory construction of the facts. The writ of error being dismissed, the judgment of the circuit court was operative and conclusive, and the means for executing it were ready. In the eye of the law the defendants had no choice, and their going out was not a discretionary surrender, but an act which supreme authority enjoined and would immediately compel. They recognized the futility of resistance, and yielded to legal necessity. See *Calvart v. Horsfall* 4 Esp. 167; Stearns, Real Act. ch. 8, and particularly p. 406.

Second. It is next contended that the action given by the statute is merely the common-law action of trespass for mesne profits, where nothing is recoverable except the damage caused by waste or some sort of special injury to the premises, the use or rental value and the costs incurred in the case to recover possession; and that the allowance by the court below of other heads of damage was, therefore, error.

It is futile to examine the propriety of the conclusion

unless the premises are legitimate, and it is not admitted that this action is analogous to the ancient action of trespass for mesne profits. That remedy could hardly be deemed fit and suitable in a case of forcible dispossession or forcible detention where the interference would usually be brief and the use or rental be little more than nominal, and the action under review is given just the same, whether the case be one in which the plaintiff has been driven out or kept out by force, or one in which the element of force has not existed. If we recur to the language, we at once see that it does not suggest any such intent. Had it been the purpose to allow recovery for only the same matters as in an action for mesne profits, it would have been natural to mark it by characteristic language, and the large and general expressions which now appear would scarcely have been chosen. When a recovery of mesne profits was to be provided for, the Legislature, instead of making use of the broad phraseology which enters into § 6717, were careful to employ words which would expressly confine the damage to rents and profits, except in the case of dower; and the fact of the exception, as well as its character, only tend to strengthen the construction. § 6245. It will not be denied that the regulations are in pari materia, and since the Legislature when dealing with the subject of mesne profits in the statute concerning ejectment have used words which expressly restrict the damage to rents and profits, and have seen fit to apply different and much larger terms in the statute under review, the conclusion is very strong that a different scope and meaning were intended, and that the criterion of damage in the one case was not to be the criterion in the other. There is no occasion to speculate on possibilities and attempt an enumeration of all the heads of damage the statute would admit of.

Having reached the result that the limitation settled in suits for mesne profits does not apply, it remains to see whether any of the items specified in the verdict are dehors the remedy. The only thing which the defendants point out as unauthorized is the item for loss of profits in the way of trade. And the ground of objection alleged here is that

such damage. is not recoverable in cases for mesne profits. But, since we have concluded that this is not an action of that sort, nor governed by the same principles, the reason for the objection fails. But it may be well to go further.

The statute gives an action of trespass, or trespass on the case, and gives treble damages. Had nothing been said about trebling damages the elements of damage must certainly. have been referred to the principles which govern such actions. And it is not perceived that the provision for multiplying the single damages was designed to produce any change in that regard. It may be that this regulation was intended to exclude the kind of damages which are generally known as punitory, and on the principle of attaining the same end by trebling such other of the damages as are allowed to be trebled. But on this subject no decision is called for. The Supreme Court of Connecticut, in a case of the same nature, observed as follows: "The party is to be indemnified for what he has actually suffered; and then all those circumstances which give character to the transaction are to be weighed and considered. *Bracegirdle v. Orford* 2 M. & S. 77; *Churchill v. Watson* 5 Day 140. Thus, whether the entry was violent or quiet, whether through malice or mistake, whether under color of right or without any pretense of title, are all proper subjects of consideration. And if a person, acting without pretense of right, would be subject to greater damages than one acting under a bona fide claim of title, surely such claim, accompanied by proof of actual title, should be submitted to the triers. For instance, if a tenant at sufferance was holding over, and the lessor ejected him by force, under an execution, which was technically defective, ought that man to recover the same damages as if he had been dispossessed, in the night season, by an armed ruffian, whose object was plunder?" *Bateman v. Goodyear* 12 Conn. 575. There is much in these observations which is pertinent to the case before the Court. The statement of the general principle is quite applicable. The plaintiffs were to be indemnified for what they had actually suffered. But, of course, the principles relating to

the injury and pertaining to the remedy must finally decide
what is required to constitute indemnity. No specific effect
of the injury can be admitted as an element of damage un-
less it is near enough to the injury to make it just and
reasonable that the defendants should answer for it to the
plaintiffs. Nor can any particular effect, however natural,
which is not a necessary result, be allowed as a ground of
recovery, unless it is specially charged.

It was recently held in California, where damages were
demanded for a forcible entry and detainer, that no recovery
could be had for bodily or mental pain or injury to credit,
(*Anderson v. Taylor* 56 Cal. 131;) and the courts of New
York regard the value of the use and occupation as some-
thing recoverable distinct from damages. But this view is
founded on the express language of the Code. *Cagger v.
Lansing* 64 N. Y. 417. It was intimated in *Howser v.
Melcher* 40 Mich. 185, that there was room for question
whether any damage for loss of profits could be recovered
in this kind of action. On full consideration the ground of
this doubt is entirely removed. We think the adoption of
the loss of profits as an increment of the damages was fully ·
warranted by the decisions. *Allison v. Chandler* 11 Mich.
542; *Tracy v. Butters* 40 Mich. 406; *Grand Rapids etc. R.
R. Co. v. Heisel* 47 Mich. 393; *Gilbert v. Kennedy* 22 Mich.
129; *Shaw v. Hoffman* 21 Mich. 151: 25 Mich. 167;
*Welch v. Ware* 32 Mich. 80; *Heiser v. Loomis* 47 Mich. 19.
And we are not satisfied that any error was committed in
letting in either of the other items.

In *Howser v. Melcher*, before referred to, there was a
special verdict, and a question arose on the effect of it. It
found a given small amount expressly as damages, and
further set forth what the jury had ascertained to be the
amount of certain other claims, but without finding them as
damages either specifically or by any general statement or
designation. And it was decided that amounts not found
as DAMAGES by the jury could not be trebled by the court
under this statute. The present case raises no such question.
The verdict is for damages in toto. The only special feature

is that the jury, pursuant to the instructions of the court, have analyzed their general finding of damages, and reported the various heads and their respective amounts. It will not be forgotten that after giving to the party treble damages the statute goes on to say, "and all other damages to which he may be entitled." This double provision seems to have caused some confusion, but no question is made to depend upon it. Without assuming to offer an authoritative opinion I venture to suggest whether, as the treble damages are confined to such matters of damage as obtain " from the time of the forcible entry, or forcible detainer, or of the notice to quit, or demand of possession, as the case may be," the " other damages" mentioned are not intended to be such, if any, as obtain outside of that time.

Third. The defendants now make the point that neither count in the declaration is valid for the purpose of getting treble damages under the statute, and *Howser v. Melcher* supra, and other authorities are cited.

It is a sufficient answer to observe that there is no charge of error to warrant the objection. The only assignment that relates to the matter is one which asserts that it was error to treble the rental value of the premises, as found by the jury. No intimation is given of any fault in the declaration, and the issue which results from the charge of error presents no question of that kind. But the Court is of opinion that if the point were duly assigned as error it could not be sustained. The reference to the statute is looked on as sufficient.

The objection that single and treble damages are not recoverable under one and the same count cannot be supported. The statute on which the action is based contemplates that they may. The recovery is regarded as single, and the mode of reaching the amount does not imply a necessity for more than one count. *Osburn v. Lovell* 36 Mich. 246, and *Mooers v. Allen* 2 Wend. 247, which are cited on this point, have no application ; they refer to the impropriety of a general finding where a count at common law giving single damages is joined with a count upon the statute giving

treble damages. There everything depends on an application of the finding to the right count, and yet the verdict gives no means by which the court can so apply it.

The charge to the jury was very fair and perspicuous, and if the result is exposed to any criticism, which we do not decide or intend to intimate, it is because the process of trebling was not more comprehensive. All the points of error insisted on have been examined, and no fault is discovered of which the defendants are entitled to complain.

The judgment must be affirmed with costs.

The other Justices concurred.