McCULLAGH v. GOODYEAR TIRE & RUBBER COMPANY.

1. FORCIBLE ENTRY AND DETAINER—DAMAGES—LOSS OF PROFITS.
   Loss of profits is a proper element of damages recoverable in an action of trespass for forcible entry and detainer (CL 1948, § 630.23).

2. LANDLORD AND TENANT—SURRENDER OF PREMISES—SPECIAL DAMAGES.
   A landlord may be entitled to special damages suffered by reason of a tenant's failure to surrender premises, in addition to the reasonable rental value of the premises.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 22 Am Jur, Forcible Entry and Detainer § 47.
[2, 7] 32 Am Jur, Landlord and Tenant §§ 927, 928.
[2, 7] Measure of damages for tenant's failure to surrender possession of rented premises. 32 ALR2d 582.
[3] 32 Am Jur, Landlord and Tenant § 924.
[4] 32 Am Jur, Landlord and Tenant § 1027 et seq.
[5, 6] 15 Am Jur, Damages §§ 20, 21.
[8–10] 15 Am Jur, Damages §§ 27, 28.

3. SAME—SUBLEASE—UNLAWFUL DETAINER.

Subtenant who held over from tenant beyond the term of the sublease was guilty of an unlawful detainer of possession of the premises.

4. JUDGMENT—RES JUDICATA—SUBLEASE—UNLAWFUL DETAINER.

The judgment before a circuit court commissioner that a sublessee had unlawfully detained the premises from the tenant is conclusive evidence thereof and upon dismissal of the sublessee's appeal became *res judicata* of the tenant's right to possession.

5. DAMAGES—CERTAINTY—BASIS OF COMPUTATION.

Damages are not rendered uncertain because they cannot be calculated with absolute exactness, it being sufficient if a reasonable basis of computation is afforded, although the result be only approximate.

6. SAME—COMPUTATION.

A defendant, whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible.

7. SAME—UNLAWFUL DETAINER—SPECIAL DAMAGES—EVIDENCE.

It was not error for the trial court to receive in evidence testimony of special damages suffered by plaintiff car dealer through defendant subtenant's unlawful detainer of the premises.

8. SAME—MITIGATION—BURDEN OF PROOF.

An injured party must make every reasonable effort to minimize the damages he suffers at the hands of defendant whether by reason of breach of contract or tort and a court upon request has a duty so to charge, the burden of proof being on defendant to show that plaintiff has not used every reasonable effort so to do.

9. SAME—MITIGATION—INTENTIONAL OR POSITIVE AND CONTINUOUS TORT.

The rule requiring an injured party to mitigate his damages does not apply, where the invasion of his property rights is due to defendant's intentional or positive and continuous tort.

10. Landlord and Tenant—Automobile Dealer—Mitigation of
    Damages—Tender of Another Building.
    Plaintiff automobile dealer, tenant of premises which defendant
    unlawfully detained after expiration of sublease, was not re-
    quired to accept and use for conducting auction sale of used
    cars another building that was tendered by defendant by
    way of mitigation of damages, where there is testimony the
    tendered building was not suitable, since defendant could
    have avoided all damages by refraining from using the
    building whose use was unlawfully detained.

Appeal from Ingham; Salmon (Marvin J.), J.
Submitted January 6, 1955. (Docket No. 33, Cal-
endar No. 46,335.) Decided April 14, 1955.

Case by Don McCullagh against Goodyear Tire &
Rubber Company, a foreign corporation, for dam-
ages arising from detainer of property at termina-
tion of lease period. Verdict and judgment for
plaintiff. Defendant appeals. Affirmed.

*Pierce & Planck,* for plaintiff.

*Jennings, Fraser, Parsons & Trebilcock,* for de-
fendant.

Sharpe, J. This is an action for damages for fail-
ure of a tenant to surrender premises to the land-
lord on the termination of the lease. The record
supports the following facts: On December 15, 1943,
plaintiff, Don McCullagh, leased the premises at
1110 East Michigan avenue in the city of Lansing
from Belle R. Carr for a term of 5 years. The lease
was renewed for a further 5-year term expiring De-
cember 15, 1953. On September 6, 1945, the par-
ties entered into an agreement permitting plaintiff
to make certain alterations in the building. Subse-
quently, plaintiff desired to move to Detroit and
leased the premises to Dick Fair Company, who in
turn leased the premises to Malcolm Milks, Inc. On

May 20, 1953, Malcolm Milks, Inc., leased the premises to defendant, Goodyear Tire & Rubber Company, from July 1, 1953, to November 30, 1953, at a monthly rental of $537.50. Goodyear Tire & Rubber Company negotiated the lease with Malcolm Milks, Inc., with the understanding that Malcolm Milks, Inc., had the lease until December 15, 1953. After the lease was signed, Mr. Milks inserted the date of November 30, 1953. Defendant company also entered into a lease with Edelson Realty Company, the then owner of the premises, for a 10-year term from December 16, 1953, to December 15, 1963. When defendant company learned that plaintiff retained a leasehold from December 1, 1953, to December 15, 1953, they tendered to the plaintiff the sum of $268.75 as a fair rental of the premises based on a monthly rental of $537.50. The money was returned.

On September 30, 1953, plaintiff, through his attorney, gave notice to Malcolm Milks, Inc., and defendant company to surrender and deliver up the premises on or before November 1, 1953, for the reason that plaintiff had approximately a 200 used-car inventory which he wished to liquidate by an auction sale in Lansing. On November 23, 1953, plaintiff gave defendant, at its home office in Ohio, a notice to quit on December 1, 1953.

A summary proceeding for possession was instituted. The cause came on for a hearing on December 4, 1953, and resulted in a judgment for plaintiff. Defendant appealed and demanded a jury trial in the circuit court. On November 23, 1953, defendant leased a store at 2116 East Michigan avenue in Lansing and tendered it to plaintiff for the purpose of conducting an auction sale of used cars. Plaintiff refused to accept defendant's offer. On January 25, 1954, plaintiff instituted the present action alleging loss of profits because of defendant's holding over. Plaintiff's declaration alleges, in part, as follows:

"That the defendant continued in possession of said premises, whereupon on December 1, 1953, the plaintiff instituted summary proceedings for the recovery of the possession of said premises before Arthur Kramer, circuit court commissioner of Ingham county. That said cause was heard on to-wit, December 4, 1953, and a final judgment was issued in favor of the plaintiff and against the defendant. That on December 9, 1953, defendant appealed to the circuit court of Ingham and demanded a trial by jury, thereby preventing any possible determination of said appeal before December 16th. That, subsequently, said appeal has been dismissed upon stipulation of counsel for the respective parties. That despite the repeated requests and demands for possession of the premises made upon the defendant by the plaintiff, the defendant continued wrongfully and unlawfully and without right, to trespass upon the premises and withheld the possession thereof from the plaintiff, and to retain and use the same.

"That in consequence of the forcible detainer of said premises by the defendant, the plaintiff has been greatly injured and damaged. That, as the defendant was fully advised, the plaintiff is an automobile dealer in Detroit, Michigan and had on hand between two and three hundred used automobiles. That during the fall of the year 1953, the value of used cars suffered a sharp decline, and it was to the plaintiff's advantage to establish whatever loss there might be in his used-car inventory before the end of the year. That he had planned to use the building at 1110 East Michigan avenue, Lansing, for the purpose of liquidating this used-car inventory at auction and that said building had been remodeled to make it suitable for holding such auction sales, and that secondhand automobiles command a substantially higher price in Lansing than they do in Detroit.

"That plaintiff has been deprived of the substantial profits which he would have gained if he had had the opportunity to use premises for the sale of auto-

mobiles at auction during the period, December 1 to December 15, 1953.

"That plaintiff has also been damaged by virtue of the fact that possession of said premises would have enabled him to remove, peacefully, the electrically-operated overhead doors to which he is entitled, which said privilege the owner of the property has failed to accord to him and which will put the plaintiff to further legal expense and costs to recover his property or the value thereof."

Defendant filed an answer to plaintiff's declaration in which it is alleged in part as follows:

"The defendant denies that the plaintiff has been injured or damaged because of his inability to obtain possession of the premises. In further answer thereto, the defendant avers that it tendered to the plaintiff a larger and more convenient building at 2116 East Michigan avenue, Lansing, Michigan, for the wholesale auction of automobiles. The defendant admits that at the hearing before the circuit court commissioner the plaintiff claimed that he intended to auction 200 automobiles in the city of Lansing. The defendant admits upon information and belief that the plaintiff is an automobile dealer in Detroit, Michigan, but neither admits nor denies that he had in excess between 200 and 300 automobiles for the reason it has not sufficient information upon which to form a belief and as to those allegations, leaves the plaintiff to his proofs. The defendant denies that during the fall of the year 1953 the value of used automobiles suffered a sharp decline in excess of the ordinary month-by-month decline of prices of used automobiles. The defendant neither admits nor denies that it was to plaintiff's advantage to establish whatever loss there might be in his used-car inventory before the end of the year for the reason it has not sufficient information upon which to form a belief and therefore, as to those allegations, leaves the plaintiff to his proofs. This defendant denies that the plaintiff ever planned to use

the building at 1110 East Michigan avenue, Lansing, Michigan, for the purpose of liquidating his used-car inventory at auction. That such claim was a pretense when the plaintiff was under the belief that he could secure double damages from the defendant if he established that the defendant was a trespasser upon the premises. That the plaintiff had full opportunity to conduct such an auction in the building tendered to the plaintiff in the month of November, 1953. The defendant denies that the building had been remodeled by the plaintiff to make it suitable for holding such auctions since for the reason that such remodeling, if any, was for the purpose of servicing automobiles. The defendant denies that secondhand automobiles command a substantially higher price than they would in Detroit or any other place in Michigan.

"The defendant denies that the plaintiff has been deprived of substantial profits which he would have gained if he had had the opportunity to use the premises for the sale of automobiles at auction during the period December 1 to December 15, 1953. That the allegations in paragraph 8 are in contradiction to the allegations in paragraph 7 wherein he alleges that he would sell the automobiles at a loss at an auction in Lansing. In all events the plaintiff could have acquired all the profits of an auction sale in the building which the defendant tendered to him that he could have obtained in the building at 1110 East Michigan avenue. The defendant further avers that loss of profits is not an item of damages in plaintiff's cause of action."

The cause came on for trial at which time plaintiff was permitted to offer testimony on loss of profits over the objection of counsel for defendant. At the close of all testimony, the trial court gave the following instructions, in part, to the jury:

"I charge you that as a matter of law the defendant, Goodyear Tire & Rubber Company, was guilty of an unlawful and forceful detainer of the posses-

sion of the premises, and that plaintiff was entitled thereto from and after November 30, 1953 to December 15, 1953. The plaintiff claims that the withholding by the defendant of the possession of the premises to which the plaintiff was entitled has deprived him of certain profits which he would otherwise have made.

"I charge you that it is the law in Michigan that the plaintiff is entitled to recover from the defendant the amount representing the profits which he may have lost had he been permitted to expose automobiles for sale. It is for you, the jury, to determine the amount of such loss if they have been shown with reasonable certainty and are not so remote, speculative or contingent as to form no reliable basis for a determination as to loss.

"In connection with the matter of proof of damages, I charge you that if the plaintiff has been damaged, the fact that the extent of the damage cannot be precisely ascertained does not prevent recovery. Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate. The amount of damages may not be determined by mere speculation or guess but must be based on evidence furnishing data from which the amount of the probable loss can be ascertained as a matter of reasonable inference. In such event, you may make such reasonable and probable estimate as to loss of profits as in the exercise of good sense and sound judgment you think will produce adequate compensation to the plaintiff.

"I charge you that the plaintiff is entitled to be reimbursed for any reasonable expense he was caused in attempting to get possession of the premises by summary proceedings before circuit court commissioner Kramer. You will recall what the testimony was in that regard.

"I charge you further that the defendant cannot escape liability by offering to the plaintiff the use of

another building during the period from December 1 to December 15, 1953.

"The defendant corporation could, itself, have avoided the damages to the plaintiff by simply ceasing to cause them, by moving out and giving possession of the premises to the plaintiff during this period. Where the defendant had this opportunity to avoid the damage, it was its duty to act upon it. You will therefore disregard any offer made by the defendant to the plaintiff of the use of another building except insofar as said offer may bear upon whether the plaintiff in good faith contemplated conducting a public sale in Lansing at the time and place we have talked about here."

The jury returned a verdict in favor of plaintiff in the amount of $20,000. Defendant appeals and urges that the trial court was in error in permitting plaintiff to show loss of profits as an element of damages. It appears that plaintiff offered testimony to show an inventory of 194 used cars held and owned by him in Detroit which he intended to sell at auction in Lansing from December 1, 1953, to December 15, 1953; that because of a falling market in used cars it was desirable to sell the cars in Lansing at auction; that he could have sold his used cars in the city of Owosso, Michigan, as Owosso is nationally known as a city where used cars are sold at auction, but found it inconvenient to do so; that prices for used cars in Owosso bring an average price of $156 more per car than similar cars are sold for in Detroit; that the value of used cars sold in Lansing was $167 per car more than cars sold in Detroit.

Plaintiff, Don McCullagh, testified:

"I had a particular use for this building during the latter part of my lease. We had a large inventory of used cars in Detroit and the market on used cars was rapidly dropping, and we were unable to dispose of them as rapidly in Detroit. I planned on

bringing them to Lansing and selling them and that is what I wanted the building for. We were planning on holding an auction sale or 2 auction sales, plus an attempt to retail as many as possible. There was no other way of rapidly disposing of them in Lansing other than by auction.

"The Lansing price on used cars was considerably higher. I could have had an automobile sale, a sales of automobiles over the 2-week period.   *   *   *

"*Q.* Do you know whether or not the conditions for the sale of used cars were substantially the same at Owosso as it is in Lansing.

"*A.* Yes, it would be the same. Conditions are fairly comparable. The nearest place to Lansing where auctions are regularly held for the sale of cars is in Owosso. I have sold cars in Owosso at auction. The place nearest to Lansing where cars are sold is at Owosso which is approximately 32 miles from Lansing.

"During the latter part of 1953 there was an over-supply of used cars. There was a sharp decline in values of used cars. I would say the last of September or the first part of October it started. It continued through the period of December 15, 1953, and for some time thereafter. The prices were dropping steadily, there was an over-supply.

"Through being deprived of the possession of 1110 East Michigan avenue during the period in question I was unable to dispose of my used-car inventory at that address.   *   *   *

"*A.* I refused to accept that building for the purpose of an auction sale. That building is approximately the same size, and it was built for trailer sales, not for an automobile sale, to start with."

Plaintiff's cause of action is based upon CL 1948, § 630.23 (Stat Ann 1953 Cum Supp § 27.1997), which reads:

"The plaintiff obtaining restitution of any premises under the provisions of this chapter, shall be

entitled to an action of trespass on the case against the defendant, and may recover damages from the time of the forcible entry, or forcible detainer, or of the notice to quit, or demand of possession, as the case may be."

It is urged by plaintiff that lost profits are recoverable where one is wrongfully deprived of the use of real property. In *Hitchcock* v. *Pratt,* 51 Mich 263, it was held that loss of profits is a proper element of the damages recoverable in an action of trespass for forcible entry and detainer.

In *Pasieczny* v. *Bonkowski,* 260 Mich 107, 109, 110, we quoted with approval from note 39 ALR 386, 392, the following:

"Independently of the damages which are based upon the reasonable rental value of the premises, the landlord may be entitled, in proper cases, to special damages that he has suffered by reason of the tenant's failure to surrender the premises."

Under the facts in this case defendant was guilty of an unlawful detainer of possession of the premises. The judgment before the circuit court commissioner is conclusive evidence of unlawful holding and upon dismissal of the appeal became *res judicata* of plaintiff's right to possession, see *Moskin* v. *Goldstein,* 225 Mich 389; *F. M. Aiken, Inc.,* v. *Solomon,* 298 Mich 123 (134 ALR 888).

We are in accord with the statement found in *Eastman Kodak Company of New York* v. *Southern Photo Materials Co.,* 273 US 359, 379 (47 S Ct 400, 71 L ed 684), where the following was quoted with approval from the court of appeals:

" 'Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approxi-

mate.'" See *Eastman Kodak Co.* v. *Southern Photo Materials Co.,* 295 F 98, 102.

The United States supreme court then went on to say (p 379):

"This, we think, was a correct statement of the applicable rules of law. Furthermore, a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible."

In our opinion the trial court was not in error in receiving in evidence plaintiff's testimony of damages suffered. But it is urged that it is the duty of the landlord, when a tenant holds beyond the term of the lease, to use such means as are available to him to mitigate his damages. The general rule relative to mitigation of damages is well stated in *Rich* v. *Daily Creamery Co.,* 296 Mich 270, 282 (134 ALR 232), where we said:

"There is no question but that it is a well-established rule that in case of a breach of contract the injured party must make every reasonable effort to minimize the damages suffered and that it would be the duty of the court upon request so to charge the jury. We hold, however, under the authorities that the burden is upon the defendant to show in mitigation of the damages claimed that the plaintiff has not used every reasonable effort within his power so to minimize his damages. *Tradesman Co.* v. *Superior Manfg. Co.,* 147 Mich 702; *Flickema* v. *Henry Kraker Co.,* 252 Mich 406 (72 ALR 1046); *Milligan* v. *Haggerty,* 296 Mich 62. The same rule is applicable in tort actions as in actions for breach of contract."

Counsel for defendant relies on *Socony Vacuum Oil Co.* v. *Marvin,* 313 Mich 528. That case involved

an automobile accident. After the collision, plaintiff's driver failed to turn off the ignition on his truck, the result being that the truck and trailer caught fire. In the above case we were concerned with an element of damages occurring subsequent to defendant's wrongful act and held that it was the duty of plaintiff's driver to minimize the resulting damages. In the above case we reaffirmed the quotation from *Rich* v. *Daily Creamery Co., supra.*

In the case at bar the wrongful act was a continuing one in that defendant wrongfully kept possession of the premises for a period of 15 days.

In 15 Am Jur, Damages, § 41, p 441, we find the following:

"In some States the rule requiring one to minimize the damages arising from an injury to property does not apply in cases of intentional or positive and continuous torts, and if there is an illegal invasion of one's property rights and an intentional or positive and continuous tort, the injured party may recover whatever damages he has sustained, even though, by the exercise of ordinary care and diligence, he could have avoided the same."

Also, see *Johnston* v. *City of Galva,* 316 Ill 598 (147 NE 453, 38 ALR 1384).

In the case at bar there is evidence that the building tendered to plaintiff by defendant was not satisfactory for the purpose of conducting auction sales. In order to minimize his damages, plaintiff was not obligated to accept and use a building that was not suitable for the purpose of conducting his business when he was deprived of a building remodeled for that particular purpose. Moreover, defendant could have easily mitigated all damages by refraining to use the building during the period that plaintiff was entitled to its use.

Under the circumstances of this case, we find no error in the trial of this cause. The judgment is affirmed, with costs to plaintiff.

Carr, C. J., and Butzel, Boyles, Reid, Dethmers, and Kelly, JJ., concurred.

Smith, J., took no part in the decision of this case.