*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARKO LAW, PLLC,

Plaintiff-Appellee,

v

ERIN SALLING,

Defendant-Appellant.

FOR PUBLICATION
November 13, 2025
8:43 AM

No. 371459
Wayne Circuit Court
LC No. 23-009755-NZ

Before: ACKERMAN, P.J., and M. J. KELLY and O'BRIEN, JJ.

ACKERMAN, P.J.

A law firm's office manager exploited her position by charging tens of thousands of dollars in personal purchases to the firm's credit cards. Before leaving, she deleted many digital records of those transactions. In this statutory-conversion action under MCL 600.2919a, the trial court awarded the firm both its documented pecuniary losses and its claimed investigatory expenses as damages and then trebled that amount under the statute.

We hold that MCL 600.2919a does not alter the common-law measure of damages for conversion aside from authorizing a multiplied recovery. Because investigatory expenses incurred in uncovering or responding to a conversion fall outside that measure, they are not recoverable under the statute and may not be trebled. We further conclude that the firm failed to substantiate both its claimed investigatory expenses and its request for attorney fees. Accordingly, while we affirm the award of treble damages as to the documented pecuniary losses, we reverse the award of trebled investigatory expenses as not authorized by statute, vacate the awards for investigatory expenses and attorney fees as inadequately substantiated, and remand for further proceedings not inconsistent with this opinion.

## I. FACTS

In May 2020, plaintiff Marko Law, PLLC, hired defendant Erin Salling as an office manager. Defendant worked at the firm's Detroit office until July 16, 2022, when she abruptly resigned. On her departure, she deleted a broad array of electronic information, including the emails in her office inbox, an Amazon account she had used for firm purchases, and various

-1-

administrative files such as "manuals, confidentiality notices, things like that." She later testified that she acted out of spite.

After defendant's departure, plaintiff reviewed its records and discovered that defendant had used firm credit cards for personal expenses. In July 2023, plaintiff sued, asserting claims of conversion, fraud, embezzlement, and trespass to chattels. During a contentious 7.5-hour deposition, defendant initially denied but later admitted to making numerous purchases through the firm's Amazon account, which she had shipped to her home. Those purchases ranged from laundry detergent, makeup, and sweatshirts to a bra and sex toys. She also apparently used the firm's credit card to subsidize her own independent entrepreneurial efforts, such as decorating sunglasses and reselling them online.

Following the deposition, plaintiff moved for summary disposition as to liability under MCR 2.116(C)(10). In the ensuing motion practice, plaintiff acknowledged that the precise amount of damages remained uncertain but noted that summary disposition may be granted when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact." At the hearing, the court asked, "How long will it take you to conduct the audit and find out the total amount that's missing?" Plaintiff's counsel responded that he did not know but would ask the firm's accounting department. The court granted summary disposition as to liability and scheduled "a hearing on damages" six weeks later.

Before that hearing, plaintiff filed a brief identifying $33,665.77 in itemized credit card expenses but requesting "a modest increase to $50,000," citing the deletion of records as hindering its ability to uncover additional losses. Plaintiff asked the court to treble that amount to $150,000, to apply that figure to its fraud and embezzlement counts, and to award an additional $50,000 for trespass to chattels, $100,000 in attorney fees, and $150,000 in exemplary damages.

At the hearing, the firm's new office manager, Stephanie Remus, testified to the $33,665.77 in credit card losses. When asked whether plaintiff had incurred other expenses, Remus testified that the firm "had to pay a bookkeeper to do the review with me" and also paid IT personnel "to create the things she just got rid of, which was personnel files, that stuff for new employees." She also agreed when asked whether she was paid to "go do this stuff when we have all this other business that we need to do for the people in the state," and she further agreed with an estimate of $100,000 for these expenses.

On cross-examination, defense counsel requested documentation to substantiate these figures. Remus could not produce any, explaining instead that the figure reflected "the hourly time for the IT people we had to hire," "[t]he hourly time for the bookkeeper we had to hire," "[t]he overtime hours for me to go into the office at night and on the weekends," and "[t]he attorneys['] time to recreate things," such as "all of the manuals." When defense counsel asked whether Remus could produce records showing the time and costs incurred, plaintiff's counsel objected that there had been "no request, no discovery" and added, "I'm not giving private pay stubs, Judge, they never requested them." Defense counsel argued that the damages had to be proven and that Remus's testimony was insufficient. The court disagreed, reasoning that additional documentation was "not necessary" because "everything was destroyed and the Court has to make a decision based on what happened, there's no simple accounting where we could pull something up on a computer since it was destroyed."

The proceeding then turned to attorney fees. Plaintiff renewed its request for $100,000 in attorney fees. Defense counsel again objected that plaintiff was obliged "to prove with some type of documentation other than it cost us $100,000 to do it." The court ultimately found $33,665.77 in credit card losses and $100,000 in investigatory expenses, trebled those amounts, and added $100,000 in attorney fees, entering a judgment of $500,997.31. This appeal followed.

## II. STANDARD OF REVIEW

Although the trial court and parties characterized the proceeding at issue as an "evidentiary hearing," it was in effect a bench trial.[1] As expressly permitted by MCR 2.116(C)(10), the trial court granted partial summary disposition "[e]xcept as to the amount of damages." When summary disposition is only partially granted, however, "the action must proceed to final judgment." MCR 2.116(J)(1). Because damages are an element of each claim, they must be proven to a factfinder like any other element. While a court may "examine the evidence before it and, by questioning the attorneys, ascertain what material facts are without substantial controversy, including the extent to which damages are not disputed," MCR 2.116(J)(1)(b), the damages here were sharply contested. The court therefore went beyond identifying disputed issues and instead resolved them on the merits, rendering the hearing the functional equivalent of a bench trial.

Regardless of who finds the facts, "[a] party asserting a claim has the burden of proving its damages with reasonable certainty." *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 108; 535 NW2d 529 (1995). Plaintiff contends that defendant failed to preserve its objections in the trial court, but we disagree. Defense counsel vigorously contested whether plaintiff had submitted adequate proofs of its claimed damages. Moreover, "[n]o exception need be taken to a finding or decision" at a bench trial. MCR 2.517(A)(7). See *Detroit Free Press, Inc v Family Independence Agency*, 258 Mich App 544, 554-555; 672 NW2d 513 (2003).

Findings made after a bench trial are reviewed deferentially on appeal. "Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tuttle v Dep't of State Hwys*, 397 Mich 44, 46; 243 NW2d 244 (1976) (cleaned up). By contrast, "[q]uestions of law are reviewed de novo." *Brucker v McKinlay Transp, Inc*, 225 Mich App 442, 448; 571 NW2d 548 (1997). An award of attorney fees is reviewed for an abuse of discretion, meaning a decision that "is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

---

[1] Plaintiff initially demanded a jury trial under MCR 2.508(B)(1), and defendant later relied on that demand. Neither party, however, objected to the trial court's mode of proceeding, and no issue regarding it is raised on appeal.

III.  DISCUSSION

A.  "COSTS" AND TREBLE DAMAGES

Defendant first challenges the trial court's decision to treble the firm's investigatory expenses.  Plaintiff was awarded treble damages under MCL 600.2919a(1)(a), which allows "[a] person damaged as a result of . . . [a]nother person's stealing or embezzling property or converting property to the other person's own use" to "recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees."  Defendant argues that the statute authorizes trebling only of "actual damages," not "costs," and therefore that the $100,000 in investigatory expenses could not properly be trebled.

Defendant's reading of the statute is correct.  "A judgment for multiple damages under a statute entitles the prevailing party to single costs only, except as otherwise specially provided by statute or by these rules."  MCR 2.625(J)(3).  Nothing in MCL 600.2919a(1)(a) derogates from that presumption.  The statute directs that "actual damages sustained" be trebled, *after which* "costs" are added.  The same reasoning forecloses trebling of attorney fees.

The record also makes clear that the trial court did not award investigatory expenses as "costs" under MCL 600.2919a.[2]  Costs "depend entirely . . . upon statutory provisions; and, where no authority is given by the statute, there can be no taxation."  *Booth v McQueen*, 1 Doug 41, 41 (Mich, 1843).  Under MCL 600.2401, "[w]hen costs are allowed in any action . . . the items and amount thereof shall be governed by this chapter[.]"  Because the taxable-cost provisions in MCL 600.2401 *et seq*. do not include investigatory expenses, such expenses cannot be recovered as "costs."

Instead, the trial court evidently treated the investigatory expenses as part of the "actual damages" to be trebled.  The question, then, is whether such expenses qualify as "actual damages." In *Alken-Ziegler, Inc v Hague*, 283 Mich App 99, 103; 767 NW2d 668 (2009) (citation omitted), this Court held that under MCL 600.2919a, "actual damages" means "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses."  In that case, although the plaintiff's insurer reimbursed most of the embezzled funds, the Court held that the full amount embezzled—rather than only the unreimbursed portion—constituted the "actual damages" subject to trebling.  *Id*. at 103-104.

While *Alken-Ziegler* clarifies that insurance recovery does not affect the measure of damages, it sheds little light on the scope of "actual damages" themselves.  The common law, however, provides useful guidance.  At common law, conversion consists of "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."  *Magley v M & W Inc*, 325 Mich App 307, 314; 926 NW2d 1 (2018) (citation omitted).  Its well-established measure of damages is "the value of the converted property at the time of the conversion."  *Ehman v Libralter Plastics, Inc*, 207 Mich App 43, 45; 523 NW2d 639 (1994).  The complication is that the statute also references "stealing" and "embezzling," which

---

[2] Plaintiff's brief before the hearing referenced such expenses only in connection with its trespass-to-chattels claim.

are criminal acts rather than civil causes of action and therefore lack a recognized measure of damages.

Even so, stealing and embezzling are simply specific forms of conversion. Embezzlement is defined as criminally converting property to one's own use, MCL 750.174(1), and any act of stealing property likewise involves an "act of domain wrongfully exerted over another's personal property."[3] As a result, the statute's reference to stealing, embezzling, or converting property is best understood as a stylistic redundancy familiar in legal drafting—akin to "null and void" or "aid and abet"—not as a substantive expansion of liability. Reading it otherwise would mean that the Legislature not only provided a damages enhancement but also implicitly created new civil causes of action for "stealing" and "embezzling" without defining their elements or remedies.

Nor does the statute's phrase "damages as a result of" broaden the available measure of damages. "Result" means "[t]o be a physical, logical, or legal consequence; to proceed as an outcome or conclusion." *Black's Law Dictionary* (12th ed). While that language could be read expansively, the better interpretation is that the Legislature intended to multiply, not redefine, the damages recoverable for conversion.[4] Just as we do not believe the Legislature would implicitly create new causes of action, we likewise do not believe it would use such subtle language to redefine how conversion damages are measured.[5] The statute's text supports this conclusion by referencing "[t]he remedy provided by this section," MCL 600.2919a(2), implying that it modifies the remedy, not the underlying right. Moreover, statutes that contravene the common law must be narrowly construed: "Where there is doubt regarding the meaning of such a statute, it is to be

---

[3] We acknowledge that in *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 361; 871 NW2d 136 (2015), our Supreme Court held that "the tort established in MCL 600.2919a(1)(a) is not the same as common-law conversion" because it adds an element requiring proof that the property was converted to the defendant's "own use." The Court appears not to have considered that "own use" has long been construed as "a carry over from the common-law pleading in trover, and does not require a showing that the misappropriation was for the personal advantage of the defendant." *United States v Santiago*, 528 F2d 1130, 1135 (CA 2, 1976) (citation omitted). Cf. *McCallum v M 97 Auto Dealer, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367630); slip op at 5 (suggesting that MCL 257.233a(15) does not create an independent cause of action and instead trebles damages "recover[ed] under another recognized legal theory"). That understanding may explain why no case following *Aroma Wines* appears to have concluded that property was converted but not to the converter's "own use." In any event, the definition of "own use" the Court adopted—"some purpose personal to the defendant's interests," *Aroma Wines*, 497 Mich at 359—is broad enough to encompass "stealing."

[4] We note that some of plaintiff's claimed damages stem not from defendant's conversion of plaintiff's money but from her deletion of electronic materials before leaving the firm. That distinction was not developed in the record, however, and we decide the case on other grounds.

[5] Although *Aroma Wines* described MCL 600.2919a(1)(a) as creating a new cause of action, it did not indicate that the statute altered the common-law measure of damages.

given the effect which makes the least rather than the most change in the common law." *Energetics, Ltd v Whitmill*, 442 Mich 38, 50-51; 497 NW2d 497 (1993) (quotation marks omitted).

Accordingly, we hold that MCL 600.2919a did not create a new measure of damages distinct from the common-law rule. The measure of damages under MCL 600.2919a therefore remains the same as at common law—the value of the converted property at the time of the conversion—then multiplied by three. See *Alken-Ziegler*, 283 Mich App at 104 ("MCL 600.2919a is a punitive statute that provides for recovery of *three times the amount embezzled*." (emphasis added)). The trial court therefore erred by trebling the $100,000 in investigatory expenses, which do not fall within the common-law measure of damages for conversion.[6]

## B. SUFFICIENCY OF THE PROOFS

Defendant also challenges the sufficiency of plaintiff's proofs supporting both the $100,000 in investigatory expenses and the $100,000 attorney fee award.[7] As explained above, the investigatory expenses are not recoverable under MCL 600.2919a because they fall outside the common-law measure of damages for conversion. To the extent such expenses might be recoverable under plaintiff's other claims—such as fraud or trespass to chattels—that issue has not been briefed and is left for the trial court to address on remand.

Even apart from that legal limitation, the record fails to establish these damages with reasonable certainty. A party asserting a claim bears the burden of proving damages with reasonable certainty. *Hofmann*, 211 Mich App at 108. Although "the certainty requirement is relaxed where the fact of damages has been established and the only question to be decided is the amount of damages," relaxed does not mean *eliminated*. *Id*.

The Supreme Court illustrated these principles in *McCullagh v Goodyear Tire & Rubber Co*, 342 Mich 244; 69 NW2d 731 (1955). In that case, the plaintiff leased a building in Lansing through December 15, 1953, and sublet it through November 30, 1953. The defendant remained in possession after the sublease expired and began its own lease with the owner two weeks later. The plaintiff sued, claiming lost profits for the holdover period, asserting that he had intended to use the premises for a used-car auction.

> It appears that plaintiff offered testimony to show an inventory of 194 used cars held and owned by him in Detroit which he intended to sell at auction in Lansing from December 1, 1953, to December 15, 1953; that because of a falling market in used cars it was desirable to sell the cars in Lansing at auction; that he could have sold his used cars in the city of Owosso, Michigan, as Owosso is nationally known as a city where used cars are sold at auction, but found it inconvenient to do so; that prices for used cars in Owosso bring an average of $156 more per car than similar

---

[6] Our holding also means that plaintiff's counts I and III do not represent separate causes of action.

[7] To the extent defendant challenges the sufficiency of the proofs as to defendant's $33,665.77 in pecuniary losses, we conclude that the amount was adequately documented and affirm its award and trebling under MCL 600.2919a.

cars are sold for in Detroit; that the value of used cars sold in Lansing was $167 per car more than cars sold in Detroit. [*Id*. at 252.]

The trial court instructed the jury that damages must be proven with reasonable certainty but need not be calculated with absolute exactness:

> I charge you that it is the law in Michigan that the plaintiff is entitled to recover from the defendant the amount representing the profits which he may have lost had he been permitted to expose automobiles for sale. It is for you, the jury, to determine the amount of such loss if they have been shown with reasonable certainty and are not so remote, speculative or contingent as to form no reliable basis for a determination as to loss.

> In connection with the matter of proof of damages, I charge you that if the plaintiff has been damaged, the fact that the extent of the damage cannot be precisely ascertained does not prevent recovery. Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate. The amount of damages may not be determined by mere speculation or guess but must be based on evidence furnishing data from which the amount of the probable loss can be ascertained as a matter of reasonable inference. In such event, you may make such reasonable and probable estimate as to loss of profits as in the exercise of good sense and sound judgment you think will produce adequate compensation to the plaintiff. [*Id*. at 251.]

The Supreme Court affirmed, finding no error in the trial. *Id*. at 257.

Applying those principles here, the record does not demonstrate "reasonable certainty" of plaintiff's claimed $100,000 in investigatory expenses. Plaintiff's only evidence was its new office manager's testimony that the firm had to pay a bookkeeper, IT professionals, and attorneys to recreate files defendant deleted. Plaintiff's counsel then asked whether the total was an "estimate" of $100,000, and the office manager agreed—an approximation reflecting those expenses as well as a portion of her own time. Given that plaintiff's theory was that it incurred actual costs to retain outside professionals for this work, it is hardly unreasonable to expect supporting documentation. The record also makes clear that "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it," MCR 2.613(C), played no part in the outcome.

Plaintiff invokes the principle that a "plaintiff cannot take advantage of his own wrong or neglect to create a waiver or estoppel in his own favor." *Chisholm v Chisholm Constr Co*, 298 Mich 25, 30; 298 NW 390 (1941). But a defendant's misconduct does not relieve a plaintiff of its obligation to prove damages. "The plaintiff bears the burden to prove the damages sought by a preponderance of the evidence." *Hannay v Dep't of Transp*, 497 Mich 45, 79; 860 NW2d 67 (2014). Here, plaintiff provided no "data from which the amount of the probable loss can be ascertained as a matter of reasonable inference," *McCullagh*, 342 Mich at 251, only the office manager's conclusory estimate. We therefore vacate the $100,000 award for investigatory expenses as inadequately substantiated.

Similar deficiencies infect the attorney-fee award. When a statute authorizes an award of reasonable attorney fees, the "party seeking such fees bears the burden of establishing their reasonableness." *McCallum v M 97 Auto Dealer, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367630); slip op at 10. Under *Pirgu v United States Auto Ass'n*, 499 Mich 269, 275-276; 884 NW2d 257 (2016), a "trial court must begin its reasonableness analysis 'by determining the fee customarily charged in the locality for similar legal services' and then multiplying that number 'by the reasonable number of hours expended in the case.' " *Id*. at 275, quoting *Smith*, 481 Mich at 529. The resulting figure serves as a baseline that may be adjusted by considering factors such as:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [*Id*. at 275, quoting *Smith*, 481 Mich at 529.]

Here, the trial court stated that it was personally aware that the case had required substantial attorney time and, on that basis, awarded $100,000 in fees. The court did not determine a customary hourly rate or the hours reasonably expended, as *Pirgu* requires. "Instead, it skipped the math and settled on a round number." *McCallum*, ___ Mich App at ___; slip op at 11. Nor did plaintiff provide documentation sufficient to permit the required analysis. "A trial court abuses its discretion when it does not begin by multiplying a reasonable hourly rate by the number of hours expended and fails to acknowledge and briefly discuss the relevant factors." *Id*.

Plaintiff's authorities do not support the award. It is true that "[i]f the trial court has sufficient evidence to determine the amount of attorney fees and costs, an evidentiary hearing is not required." *John J. Fannon Co v Fannon Prod, LLC*, 269 Mich App 162, 171; 712 NW2d 731 (2005). But in *Fannon*, the defendants submitted detailed billing reports specifying the tasks performed and time expended in connection with the litigation, including discovery disputes and multiple motions for summary disposition. *Id*. That record bears little resemblance to this one. Rather, this case aligns with another unpublished case to which plaintiff points us, *Nowicki v Solecki-Nowicki*, unpublished per curiam opinion of the Court of Appeals, issued December 22, 2009 (Docket No. 288775), p 3, in which a panel of this Court vacated an attorney-fee award entered without affidavits, billing statements, or other proof of reasonableness.

Because plaintiff failed to substantiate its claimed fees, we "vacate the attorney fee award and remand for reconsideration consistent with *Pirgu*." *McCallum*, ___ Mich App at ___; slip op at 11.

## IV. CONCLUSION

Under MCL 600.2919a, a person harmed by another's theft, embezzlement, or conversion may recover three times the amount of "actual damages sustained, plus costs and reasonable attorney fees." We hold that the statute leaves the common-law measure of damages for conversion unchanged, except to authorize a multiplied recovery. Because investigatory expenses incurred in uncovering or responding to a conversion fall outside that measure, they are not recoverable as "actual damages" under the statute and cannot be trebled. We also hold that plaintiff

failed to substantiate its claimed investigatory expenses and attorney fees with adequate proof. Accordingly, we reverse the portion of the judgment awarding a trebled recovery for investigatory expenses,[8] vacate the underlying $100,000 awards for investigatory expenses and attorney fees, and remand for further proceedings not inconsistent with this opinion. Defendant, as the prevailing party, may tax costs under MCR 7.219(A).

/s/ Matthew S. Ackerman
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien

---

[8] We affirm the $33,665.77 in pecuniary losses for defendant's conversion and the trebling of those damages under MCL 600.2919a.