BRUCKER v McKINLAY TRANSPORT, INC

Docket Nos. 104940, 104941. Decided January 28, 1997. On application by
    the plaintiff for leave to appeal, the Supreme Court, in lieu of grant-
    ing leave, vacated the judgment of the Court of Appeals and
    remanded the case to the Court of Appeals for further proceedings.
    McKinlay Transport, Inc., agreed to purchase U.S. Truck Company,
    Inc. A stock purchase agreement provided that McKinlay was to
    pay ninety percent of the consolidated book value net worth of
    U.S. Truck, the manner in which the amount would be determined,
    that disputes would be resolved by arbitration, the method of
    choosing the arbitrator, and that questions of contract interpreta-
    tion were to be determined by the Macomb Circuit Court. McKinlay
    subsequently rejected the determined book value and exercised its
    right of arbitration.
        Litigation and appeals ensued, and the parties eventually stipu-
    lated an arbitrator and adopted rules of arbitration. The arbitrator
    eventually presented two alternate calculations of pension liability,
    and the court, Michael D. Schwartz, J., accepted the calculation
    that favored U.S. Truck stockholders. McKinlay appealed in the
    Court of Appeals. The stockholders moved in circuit court for, and
    the court entered, judgment. Following the entry, McKinlay filed a
    second appeal. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and
    JANSEN, J. (O'CONNELL, J., dissenting), vacated the judgment of the
    circuit court, found that the arbitration was statutory arbitration,
    and concluded that the agreement was invalid because it required
    questions of contract interpretation to be decided by the circuit
    court rather than the arbitrator (Docket Nos. 151588, 153991).
    Wilber M. Brucker, Jr., on behalf of the U.S. Truck shareholders,
    seeks leave to appeal.
        In an opinion per curiam, signed by Chief Justice MALLETT, and
    Justices BRICKLEY, CAVANAGH, BOYLE, and WEAVER, the Supreme Court
    held:
        Parties to an arbitration agreement may not, in the agreement,
    dictate a role for public institutions. An arbitration agreement that
    calls for entry of a circuit court judgment must conform to the stat-
    ute and the court rule. MCR 3.602, which controls under MCL
    600.5021; MSA 27A.5021, does not permit parties to use the courts

as a resource for advisory opinions to guide an arbitrator. Thus, parts of the arbitration agreement are invalid. However, it is unnecessary and improvident to reject the arbitration agreement entirely. The agreement and the rules adopted by stipulation and executed without protest did not result in prejudice to any party or in significant harm to the integrity of the court system.

Vacated and remanded.

Justices RILEY and KELLY took no part in the decision of this case.

212 Mich App 334; 537 NW2d 474 (1995) vacated.

*Freeman, McKenzie, P.C.* (by *Timothy J. Lozen* and *George J. Freeman*), for the plaintiff-appellant.

*Dykema, Gossett, P.L.L.C.* (by *Craig L. John* and *Mary E. Royce*), for the defendant-appellee.

PER CURIAM. The parties attempted to resolve this commercial dispute through arbitration. However, the agreement contained an invalid clause. For that reason, the Court of Appeals set aside a circuit court judgment that was based on the arbitration agreement.

We agree with the dissenting judge in the Court of Appeals that the remedy ordered by the court is inappropriate in this case. We therefore vacate the judgment of the Court of Appeals, and remand the case to the Court of Appeals for consideration of the issues raised by the parties in their briefs on appeal.

I

In May 1982, McKinlay Transport, Inc., bought the U.S. Truck Company, Inc., and several smaller trucking companies that were wholly owned by U.S. Truck. The sale was formalized with a thirty-six-page "stock purchase agreement."[1] Among the signatories was

---

[1] The parties executed a November 1982 supplement to the agreement. The present dispute does not concern the terms of the supplement.

plaintiff Wilber M. Brucker, Jr., who was representing the shareholders of U.S. Truck.

Basically, the stock purchase agreement called for McKinlay to pay ninety percent of the "consolidated book value net worth" of U.S. Truck. The agreement explained the manner in which accountants would determine that figure. Further, the agreement provided for arbitration if there were a dispute regarding the work of the accountants:

> 2.3 Dispute Over Accounting Matters. If Buyer shall dispute any accounting matter, notice in writing thereof shall be given to Accountants within 60 days from the receipt of the Examination referred to in Paragraph 2.1. Within 45 days after receipt of such notice, said dispute shall be submitted to arbitration by a national accounting firm chosen by Buyer and approved as to competency by Accountants. The decision of such arbitrator shall be final and binding and its fees shall be divided equally between Buyer and Seller. Any questions of contract interpretation shall be determined by the Circuit Court for the County of Macomb, State of Michigan, which shall be deemed a court of competent jurisdiction and proper venue to hear such disputes.

Such a dispute did arise. The auditor found the "book value net worth" to be $1,900,167, but McKinlay did not accept the figure. Instead, it exercised its right to arbitration.

McKinlay chose Deloitte, Haskins & Sells as the arbitrator. In November 1984, McKinlay and Deloitte were sued in circuit court by Gerald F. Whitmore, who was then representing the U.S. Truck shareholders.[2] Mr. Whitmore sought injunctive and declaratory relief in the form of an order that would bar the

---

[2] Mr. Whitmore had assumed that role from Mr. Brucker, because the latter was experiencing health problems.

selection of Deloitte. Mr. Whitmore alleged that McKinlay and Deloitte shared a "close business relationship" that would prevent Deloitte from functioning as an impartial arbitrator.

The circuit court disqualified Deloitte, and proceedings regarding the selection of an arbitrator continued for years. In June 1989, the Court of Appeals ruled that the circuit court did not err in disqualifying Deloitte.[3] In its opinion, the Court of Appeals also found that McKinlay could proceed to arbitration, rejecting Mr. Whitmore's argument (presented to the circuit court in an unsuccessful motion for summary disposition) that McKinlay had waived its right to arbitration.

Following the June 1989 decision by the Court of Appeals, the parties stipulated in August 1989 that Seidman & Seidman would be the arbitrator. Seidman's corporate successor, BDO Seidman, later undertook the arbitration.

The claim against Deloitte was dismissed with prejudice in October 1989.

An early step in the arbitration proceedings was a February 1990 order, entered by stipulation, adopting "rules of arbitration." Those rules included the following provisions:

> 7. . . . All disputes concerning discovery, or lack thereof, shall be resolved by the Macomb County Circuit Court.

*      *      *

---

[3] *Whitmore v McKinlay Transport, Inc*, unpublished opinion per curiam of the Court of Appeals, issued June 27, 1989 (Docket No. 98441).

12. The arbitrator may submit any issues of Contract interpretation in writing to the Court.

13. At such time as the arbitrator determines that it has all of the information necessary for it to make a decision, it shall notify the parties that the hearing is closed.

14. The arbitrator shall have forty-five days from the date the hearing is closed in which to reach a decision. An extension of an additional forty-five days may be granted upon agreement of both parties.

15. In the event of a conflict between the requirements of Generally Accepted Accounting Practices (hereinafter "GAAP") or the terms of the Contract, the terms of the Contract shall govern.

16. In the event any adjustment to the Consolidated Book Value of the U.S. Truck Company, Inc. (hereinafter "CBV") rests on an interpretation of the contract disputed by the parties, the arbitrator shall submit its findings in the alternative, setting forth the manner in which the alternate interpretations affect the calculation.

17. The arbitrator shall compute a total adjustment, if any, to the CBV and submit it, along with its findings, in writing, to both parties by first class mail at the addresses set forth herein.

18. The parties shall have twenty days, from the date of mailing, in which to file, with the Court and the Arbitrator, an objection to the arbitrator's findings.

19. In the absence of objections, judgment shall enter on the arbitrator's findings.

20. In the event of objections, the Court shall consider and rule on the objections in light of the provisions of the Contract, the prevailing law, and these rules and either affirm the decision of the arbitrator in whole, accept one of the alternative calculations prepared by the arbitrator, or issue an interpretation of any provision of the Contract in dispute and resubmit the matter to the arbitrator for reconsideration of the matter in light of the Court's interpretation.

21. The failure of any party to comply with the requirements of these rules or any order of the Court implement-

ing these rules shall constitute a waiver of the right to
arbitration.

In February 1991, BDO Seidman sent a seven-page
letter to the circuit court framing two issues regard-
ing the proper interpretation of the contract. Six
weeks later, the circuit court rendered its opinion
regarding those issues. Subsequent opinions and
orders of the circuit court resolved Mr. Whitmore's
motion for settlement of the order and McKinlay's
motion for rehearing.

In December 1991, BDO Seidman submitted its thir-
teen-page findings. With regard to one portion of the
agreement (pension liability), BDO Seidman presented
two alternative calculations, depending on the circuit
court's interpretation of a paragraph of the stock
purchase agreement.

Mr. Whitmore then filed a motion in which he
asked the circuit court to adopt the second alterna-
tive calculation. McKinlay's response to the motion
included objections to the report of the arbitrator.

In March 1992, the circuit court accepted the sec-
ond alternative calculation (the one preferred by Mr.
Whitmore), and made other rulings regarding the
report of the arbitrator. An April 1992 order denied
McKinlay's objections and granted Mr. Whitmore's
motion regarding the proper interpretation of the
contract.

At this point, McKinlay filed a claim of appeal.[4]

Mr. Whitmore then moved in the circuit court for
entry of judgment and for an order allowing it to
draw on a letter of credit that had been submitted to

[4] Court of Appeals Docket No. 151588.

secure the purchase price. The circuit court granted the motion in May 1992. Judgment for Mr. Whitmore entered in June 1992 for an amount somewhat less than $3 million.[5]

Following entry of the June 1992 judgment, McKinlay filed a second claim of appeal.[6]

The Court of Appeals vacated the judgment of the circuit court in July 1995. 212 Mich App 334; 537 NW2d 474 (1995). Judge O'CONNELL dissented from the Court of Appeals opinion, and from its later denial of rehearing.[7]

The plaintiff has applied to this Court for leave to appeal.

II

The Court of Appeals majority reasoned that the arbitration in this case was statutory arbitration under MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.*[8]

---

[5] The judgment stated that it "may be presented to Michigan National Bank of Detroit, to effectuate a draw as contemplated under the Letter of Credit No. 7686-A." McKinlay moved for a stay pending appeal, but it appears that the motion was denied by the circuit court. Later efforts at collection proved frustrating, and the file contains papers as late as 1993, reflecting Mr. Whitmore's efforts in this regard.

[6] Court of Appeals Docket No. 153991. During the pendency of this matter in the Court of Appeals, Mr. Whitmore died. The Court of Appeals granted a motion to substitute Mr. Brucker as the plaintiff.

[7] Reh den November 3, 1995 (Docket Nos. 151588, 153991).

[8] (1) All persons, except infants and persons of unsound mind, may, by an instrument in writing, submit to the decision of 1 or more arbitrators, any controversy existing between them, which might be the subject of a civil action, except as herein otherwise provided, and may, in such submission, agree that a judgment of any circuit court shall be rendered upon the award made pursuant to such submission.

(2) A provision in a written contract to settle by arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto, and in which it is agreed that a judgment of any circuit court may be rendered upon

That conclusion is drawn from the fact that paragraph nineteen of the previously quoted rules of arbitration stated that judgment could enter on the arbitrator's findings. See *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 495; 475 NW2d 704 (1991).

The majority concluded, however, that the arbitration agreement was invalid because it called for questions of contract interpretation to be decided by the circuit court. 212 Mich App 341-343. The Court of Appeals explained that statutory arbitration is governed by the statute and MCR 3.602.  MCL 600.5021; MSA 27A.5021  provides that "arbitration shall be conducted in accordance with the rules of the supreme court," and MCR 3.602 provides only a limited role for the circuit court. Thus, only the arbitrator can interpret the contract. *Dick v Dick*, 210 Mich App 576, 588-589; 534 NW2d 185 (1995); *Kaleva-Norman-Dickson School Dist No 6 v Kaleva-Norman-Dickson School Teachers' Ass'n*, 393 Mich 583, 591; 227 NW2d 500 (1975).

The Court of Appeals vacated the circuit court's judgment, apparently setting aside entirely the arbitration and its result:

the award made pursuant to such agreement, shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract. Such an agreement shall stand as a submission to arbitration of any controversy arising under said contract not expressly exempt from arbitration by the terms of the contract. Any arbitration had in pursuance of such agreement shall proceed and the award reached thereby shall be enforced under this chapter.

(3) The provisions of this chapter shall not apply to collective contracts between employers and employees or associations of employees in respect to terms or conditions of employment. [MCL 600.5001;  MSA 27A.5001.]

To allow parties to create their own arbitration devices after invoking statutory arbitration would create uncertainty regarding the scope of the arbitrators' authority and the scope of the authority of circuit courts. Further, the efficiency and reliability of arbitration, two important reasons why parties may wish to forgo the use of courts of law, would be disrupted if the parties could create their own arbitration devices. Accordingly, we conclude that the arbitration agreement and the rules of arbitration adopted by the parties are not enforceable at law because they do not comply with the applicable court rule and statutes.

We vacate the trial court's order of April 6, 1992, and the judgment and order of June 8, 1992. Should the parties agree to arbitration, then they must do so in accordance with the applicable court rule, MCR 3.602, and statutes, MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.* [212 Mich App 343.]

Writing in dissent, Judge O'CONNELL said that the case was much simpler than the majority seemed to believe:

I respectfully dissent. The present dispute is no Gordian knot, and requires no fatal sword stroke to resolve. Rather, by addressing the one flaw contained in the agreement, the involvement of the circuit court, the knot quickly unravels. [212 Mich App 343.]

Judge O'CONNELL thought it inexplicable that the majority cited *Dick*, since the remedy in *Dick* was to strike the legally unenforceable provision from the arbitration agreement, enforcing the remaining portions of the agreement. 212 Mich App 344. Judge O'CONNELL concluded:

I would treat the arbitration agreement presently in issue as this Court treated the arbitration agreement in dispute in *Dick*. I would strike the clauses that are contrary to the statutory arbitration act, MCL 600.5001 *et seq.*;    MSA

27A.5001 *et seq.*,  that is, ¶ 20 and portions of ¶ ¶ 7 and 18.[1]
We would then be left with a wholly valid and enforceable
arbitration agreement, as was the result in *Dick*. The matter
would be remanded to the arbitrator for prompt resolution
of the issues unlawfully submitted to the circuit court. Fur-
ther review would be limited to that provided for in the
statutory arbitration act.

More generally, it is clear from the arbitration agreement
that the intention of the parties was to arbitrate their dis-
pute. For the majority to declare the entire agreement inva-
lid only frustrates the intention of the parties, who are still
litigating the sale of a business that took place thirteen
years ago.

---

[1] Paragraph 12 need not be struck. It provides only that "[t]he
arbitrator *may* submit any issues of Contract interpretation to the
Court" (emphasis supplied). Because the language is permissive,
the statutory arbitration act is not necessarily violated by its
inclusion.

[*Id.*]

## III

Because civil litigation can be lengthy, expensive,
and stressful, it is employed only to resolve disputes
that cannot be concluded by any other peaceful
method. Thus, parties who can locate an alternative
method of dispute resolution are encouraged to
bypass the courts and use other appropriate means.

In locating an alternative means of dispute resolu-
tion, the parties are generally free to craft whatever
method they choose. All sorts of private conciliation,
mediation, and arbitration devices are available. What
parties are *not* able to do, however, is reach a private
agreement that dictates a role for *public* institutions.

An arbitration agreement (or a set of arbitration
rules) that calls for entry of a circuit court judgment
must conform to the statute and the court rule. The
Court of Appeals is also correct that MCR 3.602

(which controls under MCL 600.5021; MSA 27A.5021) does not allow the parties to use the courts as a resource that will issue advisory opinions to guide the arbitrator through the more difficult portions of the task.[9] See *Dick, supra.* Thus, as explained by the Court of Appeals, paragraph 2.3 of the arbitration agreement and several of the "rules of arbitration" are invalid.[10]

We agree with Judge O'CONNELL, however, that it would be unnecessary and improvident to reject entirely the arbitration agreement in this case. Our ruling today concerns an arbitration agreement executed in 1982, and implemented by rules of arbitration that were adopted by stipulation and executed

---

[9] An unresolved civil dispute can be heard in court if one party files a complaint that states a claim on which relief can be granted. Either before or after the complaint is filed, the parties can simplify the dispute by a partial settlement, or by agreeing that part of the dispute will be resolved by arbitration. The remaining portion of the dispute can be resolved by a court if, again, there is a claim on which relief can be granted. Later enforcement of a partial settlement or arbitration award is subject to familiar principles of law, including MCL 600.5025; MSA 27A.5025:

> Upon the making of an agreement described in [MCL 600.5001; MSA 27A.5001], the circuit courts have jurisdiction to enforce the agreement and to render judgment on an award thereunder. The court may render judgment on the award although the relief given is such that it could not or would not be granted by a court of law or equity in an ordinary civil action.

The problem in this instance is that the parties produced a sales agreement and arbitration rules that called on the circuit court to take a role unrelated to any properly pending litigation (recall that this case came to circuit court on the question, long ago resolved, whether McKinlay could select Deloitte as the arbitrator).

[10] Mr. Brucker argues, on several bases, that this case involves common-law arbitration, not statutory arbitration. See *F J Siller & Co v City of Hart,* 400 Mich 578, 581; 255 NW2d 347 (1977), and *Frolich v Walbridge-Aldinger Co,* 236 Mich 425, 429; 210 NW 488 (1926). However, that distinction does not aid him in this case, since private parties remain unable to expand the authority of the circuit court.

without protest by the parties and the circuit court. From these events, we can discern neither prejudice to any party nor significant harm to the integrity of the court system. Accordingly, our analysis of the arbitration issue raised sua sponte by the Court of Appeals is prospective, and does not affect the stipulated manner of arbitration adopted by the parties in this case.

For these reasons, we vacate the judgment of the Court of Appeals, and remand the case to the Court of Appeals for consideration of the issues raised by the parties in their briefs on appeal. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, and WEAVER, JJ., concurred.

RILEY and KELLY, JJ., took no part in the decision of this case.