BRUCKER v McKINLAY TRANSPORT, INC (ON REMAND)

Docket Nos. 202308, 202309. Submitted April 8, 1997, at Lansing. Decided
    September 16, 1997, at 9:20 A.M. Leave to appeal sought.

McKinlay Transport, Inc., and U.S. Truck Company, Inc., entered into
    an agreement for the purchase by McKinlay of U.S. Truck for
    ninety percent of the book value of U.S. Truck. Under the agree-
    ment, book value was to be determined by Arthur Young & Com-
    pany, but McKinlay could seek binding arbitration by an arbitrator
    of its choice if it disagreed with Arthur Young's valuation. The
    agreement also provided that questions involving the interpretation
    of the agreement was to be decided by the Macomb Circuit Court
    and that the circuit court could choose a valuation from among
    alternatives presented to it by the arbitrator.

Arthur Young determined the purchase price to be $1,710,150.30,
    which McKinlay disputed. McKinlay selected DeLoitte, Haskins &
    Sells to arbitrate the valuation dispute. Gerald F. Whitmore, individ-
    ually and on behalf of the shareholders of U.S. Truck, brought an
    action in the Macomb Circuit Court against McKinlay and DeLoitte,
    seeking to enjoin DeLoitte from serving as arbitrator, arguing that
    DeLoitte could not be impartial because of a business relationship
    between DeLoitte and McKinlay. The court, Michael D. Schwartz,
    J., disqualified DeLoitte and rejected Whitmore's contention that
    McKinlay had impliedly waived its right to arbitration by causing a
    delay in the selection of a new arbitrator. The Court of Appeals,
    MICHAEL J. KELLY and T. M. BURNS, JJ. (HOLBROOK, JR., P.J., dissent-
    ing), affirmed the decision of the circuit court in an unpublished
    opinion per curiam, decided June 27, 1989 (Docket No. 98441).

The parties eventually agreed to have BDO Seidman as arbitra-
    tor. BDO Seidman could not decide whether U.S. Truck's pension
    liabilities of $8,336,600 were "other benefits" for whose assumed
    cancellation McKinlay was entitled to a credit under the terms of
    the agreement, and so BDO Seidman offered the circuit court two
    purchase price figures: $100,000 (the minimum purchase price set
    by the agreement, inasmuch as including the pension liabilities as a
    credit would result in a negative amount for the purchase price) or
    $2,880,898.99 (ninety percent of book value when pension liabilities
    are not treated as a credit). The court chose $2,880,898.99 and
    entered a judgment in that amount in favor of Wilber M. Brucker,

Jr., in his individual capacity and as successor to Whitmore as the representative of the shareholders of U.S. Truck.

The Court of Appeals, HOLBROOK, JR., P.J., and JANSEN, J. (O'CONNELL, J., dissenting), in consolidated appeals, vacated the circuit court's judgment, holding that the parties had invoked statutory arbitration, as governed by MCR 3.602 and MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.*, that they could not give the power of contract interpretation to the circuit court because such interpretation was a matter for the arbitrator only, and that the parties' arbitration agreement was unenforceable because of noncompliance with the applicable court rule and statutes. 212 Mich App 334 (1995).

The Supreme Court vacated the judgment of the Court of Appeals and remanded the matter to the Court of Appeals, holding that the entire arbitration agreement need not be invalidated because the arbitration agreement and rules adopted by stipulation and executed without protest did not result in prejudice to any party or in significant harm to the integrity of the court system. 454 Mich 8 (1997).

On remand, the Court of Appeals *held*:

1. The purchase agreement provided: "A reserve or credit, as the case may be, shall be established for all liabilities, costs, expenses or refunds for the cancellation of all insurance policies whatsoever (health, life, disability, or otherwise) and any other benefits as if the cancellation had occurred at the time Buyer assumed control." As used in this provision, the term "other benefits" includes U.S. Truck's pension liabilities. This interpretation is supported by federal law governing withdrawal from multiemployer pension plans and immediate liability of withdrawing employers to the plans for unfunded vested pension benefits, 29 USC 1381 *et seq.*, and by another provision in the purchase agreement by which U.S. Truck warranted that there were no further commitments for employee benefits beyond those included as liabilities in arriving at book value. The circuit court's judgment of $2,880.898.99 must be vacated and the case must be remanded to the circuit court for the entry of a judgment of $100,000 in favor of plaintiff Brucker.

2. The circuit court erred in reversing BDO Seidman's determination that the book value of U.S. Truck had to be reduced by $113,000 to account for U.S. Truck's pension liability with respect to Red Ball Trucking. The parties agreed on a pension liability of $236,000 concerning Red Ball, of which $123,000 was assumed by McKinlay, thus requiring a reduction of $113,000 in U.S. Truck's book value.

3. The circuit court did not err in not allowing McKinlay to seek a reduction in the book value of U.S. Truck for the cost of repairing and replacing U.S. Truck's equipment. The remedy sought by McKinlay was not authorized under the purchase agreement, which provided cancellation of the sale or damages in a court action as the only available remedies for U.S. Truck's failure to maintain its equipment.

Judgment vacated; case remanded for entry of a $100,000 judgment for plaintiff Brucker.

O'CONNELL, J., concurring only in the result reached by the majority with respect to the interpretation of "other benefits" as inclusive of pension liabilities, stated that it was not necessary to address the other issues considered by the majority.

CONTRACTS — CONSTRUCTION — APPEAL.

The initial question whether contractual language is ambiguous is a question of law; if the contractual language is clear and unambiguous, its meaning is a question of law; where the contractual language is unclear or susceptible to multiple meanings, interpretation is a question of fact; questions of law are reviewed de novo on appeal; factual findings are reviewed for clear error.

*Freeman McKenzie* (by *George J. Freeman* and *Katherine Wheeler King*), for Wilber M. Brucker, Jr.

*Dykema Gossett PLLC* (by *Craig L. John* and *Mary E. Royce*), for McKinlay Transport, Inc.

ON REMAND

Before: HOLBROOK, JR., P.J., and JANSEN and O'CONNELL, JJ.

JANSEN, J. These consolidated appeals are before us on remand from the Supreme Court "for consideration of the issues raised by the parties in their briefs on appeal." *Brucker v McKinlay Transport, Inc,* 454 Mich 8, 9, 19; 557 NW2d 536 (1997). We now reverse the June 8, 1992, order and judgment of the circuit court in plaintiff's favor in the amount of $2,880,898.99 and remand for judgment to be entered

in favor of plaintiff in the amount of $100,000 as required by the parties' contract.

This dispute involves a long and complicated factual and procedural history. The facts surrounding this case have been set forth in this Court's previous opinion[1] and our Supreme Court's opinion. We will set forth the facts necessary to resolve the issues raised by the parties.

I

In May 1982, McKinlay Transport, Inc., purchased U.S. Truck Company, Inc., and other smaller truck companies that were wholly owned by U.S. Truck. The sale was formalized with a stock purchase agreement dated May 13, 1982, and the parties executed a supplement to the agreement on November 1, 1982. Plaintiff Wilber M. Brucker, Jr., represents the shareholders of U.S. Truck. Under the terms of the stock purchase agreement, McKinlay Transport was to pay ninety percent of the "consolidated book value net worth" of U.S. Truck calculated on the "control date" set forth in the agreement. The agreement set forth the manner in which the accountants were to determine the figure. The agreement also provided for arbitration if there was a dispute regarding the accountants' findings. However, the agreement stated that "[a]ny questions of contract interpretation shall be determined by the Circuit Court for the County of Macomb."

The first auditor, Arthur Young & Company, found the book value net worth to be $1,900,167, but McKin-

---

[1] *Brucker v McKinlay Transport, Inc*, 212 Mich App 334; 537 NW2d 474 (1995).

lay Transport did not accept this figure. It then exercised its right to arbitration as provided in the stock purchase agreement. In August 1989, the parties ultimately agreed that BDO Seidman would be the arbitrator. In February 1991, BDO Seidman submitted questions of contract interpretation to the circuit court. Thereafter, the circuit court rendered its opinion regarding those issues. In December 1991, BDO Seidman submitted its thirteen-page findings and determined that the consolidated book value of U.S. Truck did not exceed $1,497,306. However, with regard to one portion of the stock purchase agreement (pension liability), BDO Seidman presented two alternative calculations, depending on the circuit court's interpretation of a paragraph in the agreement.

Plaintiff filed a motion requesting that the circuit court adopt the second alternative, while defendant wanted the circuit court to adopt the first alternative. Basically, the question of contract interpretation for the circuit court was whether the phrase "any other benefits" as used in the stock purchase agreement was to include pension plan liabilities. The pension plan liabilities of U.S. Truck amounted to $8,336,600. If applied to the book value of the company, the net value would result in a negative figure. Under the terms of the stock purchase agreement, in such a situation, McKinlay Transport would have to pay $100,000 to the shareholders of U.S. Truck as the purchase price. The circuit court, however, adopted the second alternative calculation (the one requested by plaintiff). The effect of this was to not apply the pension plan liability of $8,336,600 to the consolidated book value of the company. The circuit court accord-

ingly entered judgment in plaintiff's favor in the amount of $2,880,898.99.

On appeal, defendant McKinlay Transport raises three issues. It argues that the circuit court erred in adopting the second alternative calculation because, under the clear and unambiguous terms of the stock purchase agreement, the phrase "any other benefits" includes pension plan liability. McKinlay Transport also argues that the circuit court erred in reversing the arbitrator's decision reducing the consolidated book value to reflect U.S. Truck's withdrawal liability for its subsidiary, Red Ball Trucking & Leasing, Inc. Finally, McKinlay Transport also argues that the circuit court erred in prohibiting the arbitrator from determining whether the equipment transferred by U.S. Truck pursuant to the stock purchase agreement comported with its representations regarding the condition of the equipment. We agree with defendant that the circuit court erred in interpreting the stock purchase agreement with respect to pension liability.

II

The posture of this case now requires us to review the circuit court's interpretation of the parties' stock purchase agreement.[2] The initial question whether

---

[2] Under any other circumstance, only the arbitrator can interpret the contract where the parties have agreed to arbitration. *Kaleva-Norman-Dickson School Dist No 6 v Kaleva-Norman-Dickson School Teachers' Ass'n*, 393 Mich 583, 591; 227 NW2d 500 (1975). However, our Supreme Court stated that "our analysis of the arbitration issue raised sua sponte by the Court of Appeals is prospective, and does not affect the stipulated manner of arbitration adopted by the parties in this case." *Brucker*, 454 Mich 19. We have also been ordered by the Supreme Court to address the issues raised by the parties in their briefs on appeal. We emphasize that this opinion cannot and should not be read for the proposition that courts may engage in contract interpretation of arbitration agreements. Only an arbitrator may do so. We are interpreting the terms of this contract only

contractual language is ambiguous is a question of law. *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996). If the contractual language is clear and unambiguous, its meaning is a question of law. *Id.* Where the contractual language is unclear or susceptible to multiple meanings, interpretation is a question of fact. *Id.* Questions of law are reviewed de novo on appeal, *Pakideh v Franklin Commercial Mortgage Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995), while factual findings are reviewed under the "clearly erroneous" standard of review. MCR 2.613(C).

III

The first issue concerns the interpretation of the following paragraph in the stock purchase agreement:

> 2.2.3.3 *Cancellation of Benefits*. A reserve or credit, as the case may be, shall be established for all liabilities, costs, expenses or refunds for the cancellation of all insurance policies whatsoever (health, life, disability, or otherwise) and any other benefits as if the cancellation had occurred at the time Buyer assumed control on the Control Date. In the event the 1981 U.S. Truck Group Salaried Pension Plan Contribution is not paid by the Company in the full amount accrued as a liability by the U.S. at the Control Date, full credit therefore will be given to Seller on the closing hereof.

The key question to be determined is whether the phrase "any other benefits" includes pension plans. The circuit court ruled that § 2.2.3.3 did not require an assumed cancellation of pension benefits. The circuit court stated that § 2.2.3.3 addressed the cancella-

because of our Supreme Court's order.

tion of current benefits, rather than withdrawal from a pension plan, which constituted a form of deferred compensation.

In this case, the phrase "any other benefits" is subject to interpretation because the phrase is somewhat ambiguous and broad. When presented with a contractual dispute, a court must determine what the parties' agreement is and enforce it. *G&A Inc v Nahra*, 204 Mich App 329, 330; 514 NW2d 255 (1994). Contractual language is to be given its plain and ordinary meaning, and technical and constrained constructions are to be avoided. *Id.*, p 331. We find that the plain and ordinary meaning of the word "benefits" includes pension plans. The language of the stock purchase agreement is better understood in the context of the pension plans involved in this case. U.S. Truck participated in the Central States Pension Plan, a multiemployer pension plan. The Central States Pension Plan provided benefits for its Teamster union employees under a collective bargaining agreement. Pursuant to 29 USC 1381, when a company cancels its participation in a multiemployer pension plan, a withdrawal occurs. When a withdrawal occurs, the company becomes immediately liable to the multiemployer pension fund for the unfunded vested pension benefits allocable to the employer as its proportional share of the pension plan's total unfunded vested benefits. 29 USC 1383, 1391. Given this context, the language of § 2.2.3.3 becomes clear because it requires that a reserve be established for the cancellation of any other benefits as if the cancellation had occurred on the control date. Therefore, the unfunded vested proportional liability of U.S. Truck was easily calculated by two separate accounting firms.

Further, the stock purchase agreement, when read as a whole, evidences an intent that "benefits" was to include pension plans. Section 2.2 of the agreement and the following subsections are an attempt to reflect all liabilities and credits in arriving at the consolidated book value of the company. Obviously, such liabilities, including pension plans, will be of utmost concern regarding the sale of any business. Moreover, § 3.18 of the stock purchase agreement provides:

> *Employee Benefit Plans.* There are not now, nor on the Control Date will there be, any commitments made for health insurance, life insurance, profit sharing, stock options, share purchase, retirement, or any other benefits whatsoever to which any shareholder, director, officer, employee or other person may be entitled for which [U.S. Truck] may be or become liable which cannot be terminated upon 30 days notice or less and without premium, penalty or liability, except to the extent of liability set forth in Exhibit "L."

As noted by defendant, this warranty could only be true if the consolidated book value of U.S. Truck was reduced by the unfunded vested benefits existing on the control date such that defendant would not suffer a liability if the pension benefits were canceled. Therefore, under a plain reading of the contract as a whole, it is clear that the parties intended that "any other benefits" would include pension plans.

Further, the circuit court's reasoning is faulty in that it mistakenly believed that only one pension plan existed, rather than many plans, because U.S. Truck was involved in many pension plans. The circuit court also erred in concluding that benefits did not include pension plans because pension plans are a form of deferred compensation. Although a pension plan is

deferred compensation from the standpoint of the employee, it is not deferred from the standpoint of the company, which must contribute periodically to the plan. Thus, a pension plan is always a liability from the standpoint of the company that is contributing to it.

The value of the vested pension benefits at the time of the control date was calculated to be $8,336,600, which is a liability from the viewpoint of the company. The judgment granted plaintiff $2,880,898.99; however, the pension plan liability must be subtracted from that judgment. Pursuant to the supplement to the stock purchase agreement, defendant agreed to pay at least $100,000 for U.S. Truck. Therefore, we vacate the judgment of $2,880,898.99 and remand for judgment to be entered in the amount of $100,000.

IV

Next, defendant argues that the circuit court erred when it reversed BDO Seidman's determination that the consolidated book value of U.S. Truck should be reduced by $113,000 to account for U.S. Truck's pension plan liability with respect to Red Ball Trucking on the control date.

Section 2.2.3.4 of the stock purchase agreement provides:

> *Withdrawal liability of Red Ball Trucking & Leasing, Inc.* Accountants shall accrue all costs and expenses necessary, including a stated withdrawal liability of Two Hundred Thirty-Six Thousand ($236,000.00) Dollars, to defend the asserted withdrawal from the Central States Southeast and Southwest Areas Health and Welfare and Pension Funds covering Red Ball Trucking & Leasing, Inc. (formerly Nash-

ville Pool Car, Inc.) in excess of One Hundred Twenty-Three Thousand ($123,000.00) Dollars.

The arbitrator properly read the stock purchase agreement as requiring a total of $236,000 to be recognized as a liability. Because the buyer assumed $123,000 as a liability, the arbitrator reduced the consolidated book value of U.S. Truck by $113,000.

The arbitrator's determination was in accord with the stock purchase agreement. Accordingly, the circuit court erred in setting aside the arbitrator's determination in this regard. The circuit court was persuaded by the fact that no withdrawal liability was actually incurred; however, this is irrelevant under the clear and unambiguous terms of the contract. A $236,000 liability was presumed by the parties, of which $123,000 was assumed by defendant. Therefore, the arbitrator's determination was in accord with the plain terms of the contract and the circuit court erred in reversing the decision of the arbitrator with regard to this matter. The consolidated book value of U.S. Truck was properly reduced by $113,000 by the arbitrator.

V

Lastly, defendant argues that the circuit court erred in not allowing BDO Seidman to account for the cost to repair and replace U.S. Truck's property to "good and proper roadworthy condition" on the control date. Essentially, defendant contends that the circuit court erred in prohibiting the arbitrator from determining whether the condition of equipment transferred pursuant to the stock purchase agreement comported with plaintiff's representation regarding its condition.

Under § 3.27 of the agreement, plaintiff was to maintain certain equipment in "good and proper operating and roadworthy condition" through the control date and assure that the market value of the equipment would not be less than its book value. Defendant contended that a significant amount of the equipment was not in the condition required by the agreement. Defendant now seeks to reduce the consolidated book value to comport with the true condition of the equipment.

Defendant is not entitled to any relief in this regard. Section 4.0 of the agreement provides that should a material breach occur with respect to any of the representations, defendant would have the right to waive the breach for purposes of the sale of the company, then pursue its rights in court, or terminate the agreement. Section 4.0 does not provide for the remedy that defendant seeks—reduction in book value.

Accordingly, the agreement expressed the remedies available to defendant with respect to the equipment, and reduction in book value was not one of them. Therefore, the trial court did not err in not allowing defendant to pursue this remedy.

In conclusion, we find that the trial court erred in entering judgment in favor of plaintiff in the amount of $2,880,898.99 because the pension liability for the unfunded vested pension plan of over $8 million and the withdrawal liability of Red Ball Trucking in the amount of $113,000 reduced the consolidated book value of U.S. Truck to a negative figure. The circuit court erred in not calculating those liabilities to figure the consolidated book value of U.S. Truck. Therefore, the judgment of $2,880,898.99 is vacated and we

remand for the circuit court to enter judgment in the amount of $100,000. We do not retain jurisdiction.

HOLBROOK, JR., P.J., concurred.

O'CONNELL, J. *(concurring)*. I concur only in the result reached by the majority in the third section of its opinion. In light of this, I believe it is unnecessary to reach the issues addressed in sections four and five of that opinion.[1]

---

[1] But for the Supreme Court's edict in *Brucker v McKinlay Transport, Inc.*, 454 Mich 8, 19; 557 NW2d 536 (1997), I would strike the clauses that are contrary to the statutory arbitration act, MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.*, and remand to the arbitrator for further proceedings, *Brucker v McKinlay Transport, Inc*, 212 Mich App 334, 344; 537 NW2d 474 (1995) (O'CONNELL, J., dissenting).