*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

LORI MARIE ELAM,

      Plaintiff-Appellant,

UNPUBLISHED
October 15, 2020

v

No. 348201
Otsego Circuit Court
LC No. 04-010587-DO

ROBERT T. ELAM,

      Defendant-Appellee.

Before: MURRAY, C.J., AND CAVANAGH AND CAMERON, JJ.

PER CURIAM.

In this post-divorce proceeding, plaintiff appeals an order denying her requested calculation of interest payments. We vacate and remand to the trial court for further proceedings.

## I. BACKGROUND

Plaintiff and defendant were married in October 1994. Plaintiff filed for divorce on February 4, 2004, and the trial court entered a consent judgment of divorce on January 5, 2005. The judgment referenced a property settlement agreement, under which defendant was to pay plaintiff a certain sum of money over the course of 12 years. The agreement contained a payment schedule. In relevant part, the agreement provided as follows:

> Plaintiff is to be paid monthly installments of $1,000 dollars per month starting February 02, 2005 as principle [sic] and interest on the $175,000 balance which shall be accruing interest as a traditional mortgage note in the amount of 3.75% effective January 03, 2005.

The agreement also provided that the "installment payments" would "be secured by a mortgage" on certain real property located in Gaylord, Michigan. Under the agreement, defendant was required to sign a "mortgage note," but defendant never did so. After the final payment to plaintiff came due in January 2017, plaintiff argued that defendant owed over $50,000 in accrued

amortized interest. To support this, plaintiff submitted an amortization schedule. In response, defendant argued that a simple interest rate should apply and that he only owed $6,562.50 in interest.

The trial court held an evidentiary hearing to determine how interest accrued on a "traditional mortgage note." Both parties presented expert witnesses. Plaintiff's expert, Michael Kolasa, testified that a traditional mortgage note meant a bank mortgage calculated under an amortized interest schedule. According to Kolasa, the agreement provided enough information for him to calculate the amount of interest that defendant owed to plaintiff. Defendant's expert, Timothy Hall, testified that he could not determine the amount of interest that defendant owed without a note. Both experts agreed that the trial court should not apply defendant's proposed interest calculation.

The trial court found that, based on the plain language of the agreement and the testimony of Kolasa and Hall, the parties "likely intended to enter into a private loan that was to be repaid in the same way as a bank mortgage loan" and that the parties intended for interest to accrue "in the same way as a bank mortgage loan." The trial court further found that defendant's proposed calculation was inconsistent with the agreement and the testimony of the experts. However, the trial court concluded that because both experts agreed that the interest rate could not be calculated without a note, it was "impossible" for the trial court to calculate interest in the manner advocated by plaintiff. The trial court further concluded that it was required "to apply simple interest to the property settlement" because it was not permitted to "insert terms into a contract." The trial court also noted that "there [were] equitable reasons why th[e] Court should not enforce the Plaintiff's interpretation of the calculation of interest." Specifically, the trial court concluded that because plaintiff had not enforced the provision in the agreement that required defendant to execute a mortgage note, it would be inequitable to adopt plaintiff's interest calculation. The trial court applied defendant's calculation of interest. Thereafter, plaintiff filed a motion for reconsideration, which was denied. This appeal followed.

## II. ANALYSIS

Plaintiff first argues that the trial court erred by sua sponte applying the defense of laches. We agree.

"Equitable issues are [generally] reviewed de novo, including equitable defenses such as laches." *Stock Bldg Supply, LLC v Crosswinds Communities, Inc*, 317 Mich App 189, 199; 893 NW2d 165 (2016). However, because plaintiff failed to raise this issue any time before the trial court, the argument is unpreserved. See *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386-387; 803 NW2d 698 (2010). We therefore review for plain error. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.*, quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a party's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763.

"Laches is an affirmative defense based primarily on circumstances that render it inequitable to grant relief to a dilatory plaintiff." *Attorney General v PowerPick Club*, 287 Mich App 13, 51; 783 NW2d 515 (2010). We have explained:

> The doctrine of laches is triggered by the plaintiff's failure to do something that should have been done under the circumstances or failure to claim or enforce a right at the proper time . . . . The defense, to be raised properly, must be accompanied by a finding that the delay caused some prejudice to the party asserting laches and that it would be inequitable to ignore the prejudice so created. *The defendant bears the burden of proving this resultant prejudice*. [*Id.* (quotation marks and citations omitted; emphasis added).]

In this case, because defendant never argued before the trial court that laches applied, defendant never established that he was prejudiced by plaintiff's failure to ensure that defendant signed a mortgage note. Rather, defendant essentially argued that plaintiff's calculation of interest was not consistent with the plain language of the agreement and that the trial court should therefore rely on defendant's interest calculation. Consequently, the trial court plainly erred by sua sponte raising a defense on defendant's behalf and by applying laches. Furthermore, the error affected the outcome of the proceedings because the trial court's decision not to adopt plaintiff's theory regarding the calculation of interest was based in part on its conclusion that laches applied. Moreover, upon review of the record, we disagree with the trial court that it was appropriate to apply the defense of laches under the facts of this case. Therefore, plaintiff has established plain error affecting her substantial rights.

Next, plaintiff argues that the trial court erred by holding that it was required to apply defendant's formula for calculating simple interest. We agree.

"The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 473; 663 NW2d 447 (2003) (citation omitted). "If no reasonable person could dispute the meaning of ordinary and plain contract language, the Court must accept and enforce contractual language as written[.]" *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008). Thus, "[a]bsent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001). "If the contractual language is clear and unambiguous, its meaning is a question of law." *Brucker v McKinlay Transp, Inc*, 225 Mich App 442, 448; 571 NW2d 548 (1997). However, "[w]here the contractual language is unclear or susceptible to multiple meanings, interpretation is a question of fact. Questions of law are reviewed de novo on appeal, while factual findings are reviewed under the clearly erroneous standard of review." *Id.* (quotation marks and citations omitted). "A finding is said to be clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Erickson Estate*, 202 Mich App 329, 331; 508 NW2d 181 (1993).

In this case, the plain language of the agreement provided that the $175,000 balance would accrue "interest as a traditional mortgage note in the amount of 3.75%[.]" The agreement further provided that plaintiff would be paid $1,000 each month "as principle [sic] and interest[.]" At the

evidentiary hearing, Kolasa testified as follows:

> [A] traditional mortgage or conventional mortgage would be you're borrowing money and making, in most cases, monthly payments toward that amount, and those monthly payments represent both interest that's accrued, and after interest is paid, any remaining balance of the payment is applied to the principal.

Kolasa believed that another person in his field would interpret the phrase "traditional mortgage" as requiring amortization.[1]  Kolasa commented that the concept of calculating payments as part interest and part principal was "pretty plain vanilla" and that the same calculation could be found on at least 50 different websites.  Kolasa further testified as follows: "The language in the Property Settlement read in context is clearly what we would call a conventional or traditional mortgage[.]"  Kolasa created an amortization schedule based on the language of the agreement, and the schedule was admitted into evidence.  Based on his calculations, Kolasa testified that defendant owed a balance of $51,012.13 as of the date of the hearing.

Kolasa testified that defendant's proposed interest calculation was inconsistent with the language in the agreement and was "inconsistent with the term 'traditional mortgage' or 'traditional mortgage note.' "  Specifically, Kolasa noted that defendant's "one-time interest calculation" was "not an accrual" and that the calculation was inconsistent with the agreement that defendant would not be penalized for "early repayment."  According to Kolasa, with a fixed rate, the amount of interest due would be the same regardless of when defendant made payments.  In contrast, when using the amortization schedule created by Kolasa, defendant would essentially be rewarded for early repayment.  Kolasa also noted that defendant appeared to have been paying interest to plaintiff over the course of 12 years.  Indeed, defendant acknowledged that he had "overpaid" plaintiff.

Hall testified that the reference to a "traditional mortgage note" in the agreement was confusing because there is an array of notes and mortgages, and which one is used depends on the nature of the transaction.  Hall explained that a mortgage pledges real estate to secure a note and that a note is a promise to pay back money.  Hall testified that in order to interpret what the phrase a "traditional mortgage note" meant, he would need to see a note with the exact terms and conditions concerning payment and interest.  However, Hall acknowledged that a note had not been executed by defendant.  Hall testified that an individual would have to make assumptions to calculate the remaining balance of interest based on the agreement alone.  On cross-examination, however, Hall acknowledged that the bank he worked for had an online mortgage calculation tool that allowed users to select "conventional" as a mortgage type.  Hall further acknowledged that the tool would generate an amortization schedule that was similar to the one that Kolasa had created.  Nonetheless, Hall testified that it was incorrect to draft an amortization schedule solely from an agreement.

The trial court found that, based on the plain language of the agreement and the testimony of Kolasa and Hall, the parties likely intended to "enter into a private loan that was to be repaid in

---

[1] Kolasa is a trust and planning officer for a bank and has an LLM in taxation law.

the same way as a bank mortgage loan" and that the parties intended for the interest to accrue "in the same way as a bank mortgage loan." The trial court then concluded, however, that it was "impossible" for the court to calculate the amount of interest owed because defendant had not executed a mortgage note. This conclusion was based on the trial court's finding that both Kolasa and Hall testified "that in a 'traditional' mortgage scenario, the parties sign a 'promissory note' or a 'mortgage note' that creates the debt and defines how the debt will be repaid." The trial court concluded that "the rights and duties of the parties are derived from the terms of the agreement" and that courts are not permitted to "modify or insert terms into a contract[.]" Consequently, "[b]ecause there [was] no express agreement in the form of a mortgage note for the calculation of interest," the trial court concluded that it was obligated to "apply simple interest to the property settlement."

In so holding, the trial court primarily relied on this Court's decision in *Norman v Norman*, 201 Mich App 182; 506 NW2d 254 (1993). In *Norman*, the parties' consent judgment of divorce provided that the "plaintiff was to have a lien on the marital home in the amount of $14,000, which was to accrue interest and was to become due and payable upon the happening of any of certain listed events." *Id*. at 183-184. "The consent judgment provided that the lien was to be 'with interest to accrue thereon at the rate of 8¾% per annum from the date of entry of th[e] judgment.' " *Id*. at 184. After one of the "triggering events" occurred, the parties disputed "whether the interest on the lien was to be calculated as simple or compound interest." *Id*. The trial court concluded that because "the judgment was not clear regarding how the interest should be calculated," it was proper to "exercise its equitable jurisdiction to make a discretionary decision" and to "calculate the interest as being compounded annually" "in order to adequately compensate [the] plaintiff[.]" *Id*. The defendant appealed. *Id*.

On appeal, this Court concluded that the trial court erred by impliedly concluding that the judgment was ambiguous. *Id*. Specifically, this Court held, "[i]t is true that the judgment did not state explicitly whether the interest was to be simple or compound, but the analysis does not end there. Silence does not equal ambiguity if the law provides a rule to be applied in the absence of a provision to the contrary." *Id*. After consulting multiple applicable authorities, the *Norman* Court held as follows:

> In light of the general rule favoring simple interest over compound interest, and in light of the case law, we reach the conclusion that there is a rule to apply regarding simple versus compound interest. Namely, in the absence of a statute to the contrary, an explicit agreement of the parties, or some special circumstance dictating otherwise, the rule in this state is that interest shall be calculated on the basis of simple interest rather than compound interest. In the case at bar, there is no statute that specifically provides for the payment of compound interest, and the parties' agreement, memorialized in the consent decree, does not explicitly provide for compound interest. This silence, rather than being ambiguous, means that the interest shall be calculated on the basis of simple interest rather than compound interest in the absence of some special circumstance dictating otherwise. [*Id*. at 187.]

In this case, however, the language of the agreement specifically provided that the interest would accrue "as a traditional mortgage note." Kolasa was able to create an amortization schedule based on his knowledge of what a "traditional mortgage" meant and based on the plain language of the agreement, which he noted contained all of the necessary information. Specifically, the agreement contained the amount "borrowed, the interest rate, and a maturity date." Kolasa testified that, based on his calculations, defendant owed plaintiff a balance of $51,012.13 under the agreement. Kolasa explained in detail how he reached that amount and testified that, based on his experience, the manner in which he calculated the interest was consistent with "all fixed rate mortgages." Kolasa acknowledged that defendant had not signed a mortgage note, but stated that the agreement essentially acted as the note because private agreements do not require the same amount of the detail as that of a loan issued by a bank. Kolasa testified that, because this was a private transaction, the parties did not have to calculate the amount of interest to be paid. Rather, Kolasa testified that such details "would be up to [defendant] and his counsel" and would likely have been a topic considered during settlement negotiations. Furthermore, Kolasa opined that the final amount of interest owed in 2017 would have been difficult to calculate in 2005 because late or early payments would have affected the interest calculation.

Thus, contrary to the trial court's finding, both experts did not testify that it was "impossible" to calculate the interest owed by defendant because a mortgage note was not executed. Rather, Kolasa testified to the contrary. Although the trial court as the finder of fact was permitted to conclude that Kolasa's testimony was not credible or that it was proper to afford more weight to Hall's testimony, there is no indication that the trial court did so. Rather, in the written opinion, the trial court found "both witnesses [to be] generally credible and unbiased." Consequently, the trial court clearly erred by finding that both experts concluded that it was "impossible" to calculate interest without a mortgage note. Although plaintiff urges this Court to apply her interest calculation and to hold that she is entitled to $51,012.13, this Court is not the correct forum to resolve disputed factual questions such as these. Rather, such factual determinations are properly left to the finder of fact. See MCR 2.613(C). Plaintiff may make this argument before the trial court on remand.

Next, plaintiff argues that, even if a simple interest rate does apply, the trial court's finding that plaintiff was only entitled to $6,562.50 in interest was clearly erroneous. We agree. Hall testified that defendant's method of multiplying interest by principal to find a flat charge of $6,562.50 was "illogical" and did not "make sense." According to Hall, a flat calculation of principal times interest is not an accurate reflection of simple interest because time needs to be taken into consideration. Nonetheless, after improperly concluding that both experts had agreed that it was "impossible" to calculate interest without a mortgage note and that the defense of laches applied, the trial court held that it was required "to apply simple interest to the property settlement." The trial court then adopted defendant's interest calculation. Because the record establishes that the manner in which defendant calculated simple interest is not the proper way to calculate simple interest, the trial court's finding was clearly erroneous.

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron